FILED _____ ENTERED
_____ LODGED _____ RECEIVED

FEB 12 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

Judge Robert S. Lasnik

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

SERGEI POTAPENKO,

Defendant.

No. CR22-0185RSL

**PLEA AGREEMENT**

The United States, through United States Attorney Tessa M. Gorman and Assistant United States Attorneys Andrew C. Friedman and Sok Tea Jiang of the Western District of Washington ("USAO") and Chief Margaret A. Moeser and Trial Attorneys Adrienne E. Rosen and David Ginensky of the Money Laundering and Asset Recovery Section, Criminal Division, Department of Justice ("MLARS") (collectively, the "United States"), Sergei Potapenko, and his attorneys Mark E. Bini and Mark N. Bartlett, enter into the following Plea Agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.     **The Charge.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to the charge of Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349, contained in Count 1 of the Indictment.

Plea Agreement - 1
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering this plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2.      **Elements of the Offenses.** The elements of the offense to which Defendant is pleading guilty are as follows:

The elements of Conspiracy are that:

First, beginning no later than 2015, and ending in or about August 2019, there was an agreement between two or more persons to commit the crime of Wire Fraud as charged in the Indictment; and

Second, Defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

The elements of Wire Fraud are that:

First, Defendant knowingly devised or participated in a scheme or plan to defraud, or a scheme or plan to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, Defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, Defendant used, or caused to be used, an interstate or foreign wire communication to carry out, or attempt to carry out, an essential part of the scheme.

3.      **The Penalties.** Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows: a maximum term of imprisonment of up to 20 years, a fine of up to $250,000.00, a period of supervision following release from prison of up to three years, and a mandatory special

Plea Agreement - 2
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

assessment of $100.00. If a probationary sentence is imposed, the probation period can be for up to five years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States.

4.    **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

Plea Agreement - 3
*United States v. Sergei Potapenko*, No. CR22-0185RSL

1 immigration consequences that Defendant's guilty pleas may entail, even if the

2 consequence is Defendant's mandatory removal from the United States.

3     5.    **Rights Waived by Pleading Guilty.** Defendant understands that, by

4 pleading guilty, Defendant knowingly and voluntarily waives the following rights:

5     a.    The right to plead not guilty and to persist in a plea of not guilty;

6     b.    The right to a speedy and public trial before a jury of Defendant's

7 peers;

8     c.    The right to the effective assistance of counsel at trial, including, if

9 Defendant could not afford an attorney, the right to have the Court appoint one for

10 Defendant;

11     d.    The right to be presumed innocent until guilt has been established

12 beyond a reasonable doubt at trial;

13     e.    The right to confront and cross-examine witnesses against Defendant

14 at trial;

15     f.    The right to compel or subpoena witnesses to appear on Defendant's

16 behalf at trial;

17     g.    The right to testify or to remain silent at trial, at which trial such

18 silence could not be used against Defendant; and

19     h.    The right to appeal a finding of guilt or any pretrial rulings.

20     6.    **United States Sentencing Guidelines.** Defendant understands and

21 acknowledges that the Court must consider the sentencing range calculated under the

22 United States Sentencing Guidelines and possible departures under the Sentencing

23 Guidelines together with the other factors set forth in Title 18, United States Code,

24 Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the

25 history and characteristics of Defendant; (3) the need for the sentence to reflect the

26 seriousness of the offense, to promote respect for the law, and to provide just punishment

27 for the offense; (4) the need for the sentence to afford adequate deterrence to criminal

Plea Agreement - 4
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in Section 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8. **Statement of Facts.** Defendant admits Defendant is guilty of the charged offense. The parties agree on the following facts:

At all relevant times, Defendant, Sergei Potapenko, and his co-conspirator, Ivan Turõgin (collectively, the "co-conspirators"), were residents of Estonia. In 2015, the co-conspirators advertised a service marketed under the name HashFlare. At all times relevant to this plea agreement, the co-conspirators controlled HashFlare and directed its operations. HashFlare offered customers the opportunity to

Plea Agreement - 5
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

participate in supposed remote ("cloud") mining of cryptocurrency.

HashFlare's remote-mining contracts promised customers that HashFlare would provide them a "cloud hosted mining service" using "mining hardware" owned by HashFlare. HashFlare offered customers the option to participate in mining any of five cryptocurrencies: Bitcoin, Ether, Dash, Litecoin/Dogecoin (Scrypt), and Zcash. HashFlare charged customers a specified price to purchase a specified amount of computing power ("hashrate"). For example, HashFlare offered customers wishing to mine Bitcoin 10 gigahash per second of computing power for $1.80.

HashFlare's contracts promised customers that cryptocurrency mined from the computing power they had purchased, less applicable electricity and maintenance fees, would be credited to the customers' account within 24 hours. HashFlare provided customers access to a web-based dashboard through which the customers could purchase hashrate, monitor their accounts, see supposed daily payouts, and request withdrawals.

Amidst a global rush for cryptocurrency-mining services, members of the public flocked to HashFlare, and sales grew rapidly. As reflected in company records, customers paid approximately the following amounts to purchase remote mining contracts:

| Year | Mining Contracts Sold |
|------|-----------------------|
| 2015 | $1,560,324.43 |
| 2016 | $6,341,226.18 |
| 2017 | $391,807,180.30 |
| 2018 | $177,526,276.82 |
| 2019 | $100,860.34 |
| **Total** | **$577,335,868.08** |

HashFlare's web-based dashboard showed customers that they were earning daily profits from supposed cloud mining. In fact, defendants caused HashFlare employees to falsely report figures for supposed gross mining profits, maintenance

Plea Agreement - 6
United States v. Sergei Potapenko, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

fees, electricity costs, and net profit that were based upon information derived from the publicly available mining pool data of other mining services and upon information extrapolated from the limited mining actually performed by HashFlare, rather than the full cryptocurrency mining promised by HashFlare.

In reality, HashFlare did not possess the requisite computing capacity to perform the vast majority of the mining the co-conspirators told HashFlare customers it performed. For example, although the great majority of the mining contracts sold were contracts for Bitcoin, HashFlare did not purchase more than a few miners to mine Bitcoin until 2017. This was more than two years after HashFlare had first sold contracts promising immediate returns from Bitcoin mining, and after its dashboard falsely reflected such returns. And, although HashFlare would have required approximately 80,000 cryptocurrency miners by 2018 to satisfy the Bitcoin mining capacity that it had sold, HashFlare still had only approximately 164 such machines (most of which did not work properly according to HashFlare's own records).

HashFlare paid, or repaid, customers, including customers who had purchased cryptocurrency-mining contracts during the early days of HashFlare's existence. Because HashFlare was not performing significant cryptocurrency mining, and therefore not generating cryptocurrency through mining operations, HashFlare paid customers who requested to withdraw their supposed profits almost entirely with cryptocurrency that HashFlare had purchased on the open market.

On July 20, 2018, the co-conspirators caused HashFlare to send a letter to customers indicating that the prior several months had been difficult, that HashFlare had been unable to lower maintenance and electricity expenses, and that Bitcoin mining therefore had become unprofitable. The co-conspirators invoked a clause in HashFlare's terms of service that allowed HashFlare to stop Bitcoin mining if it had been unprofitable for 28 days.

In total, HashFlare paid, or repaid, its customers cryptocurrency that, at the time of such payment or

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

repayment, was worth no more than approximately $352.97 million. Defendant understands that the United States is not agreeing that this amount was all paid or repaid to customers, and that it may argue that the amount of such payments and repayments was lower.

Defendant was aware of, and with his co-conspirator conspired to cause, each of the misrepresentations described in this agreed statement of facts using interstate or foreign wires. In particular, Defendant caused HashFlare to represent to customers, including customers who resided and were located in the Western District of Washington, that HashFlare had cryptocurrency-mining capacity that he knew it lacked, and that it was performing cryptocurrency mining that he knew it was not. Defendant intended, through these material misrepresentations, to deceive and cheat customers, and thereby obtain money and property through false and fraudulent pretenses.

The co-conspirators caused HashFlare to transfer customer funds that were not used to repay customers' supposed profits to an array of other entities and businesses that the co-conspirators formed and controlled. Among other entities, these included Polybius entities, several affiliated entities that the co-conspirators established with the stated goal of creating an online bank. They also used customer funds to purchase real properties, in Estonia and elsewhere, to purchase cars and jewelry, and otherwise for their personal benefit. Defendant agrees that all of the assets identified in paragraph 12 (Forfeiture of Assets) constitute, were purchased with, or otherwise derive from proceeds traceable to the wire-fraud scheme described herein, to which he is pleading guilty.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, including additional facts concerning the loss amount. In particular, Defendant understands that the United States expects to argue that the loss to HashFlare customers is greater than $250

Plea Agreement - 8
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    million but agrees that it will not argue that loss is more than $550 million.  The factual

2    statement contained herein is not intended to limit the facts that the parties may present to

3    the Court at the time of sentencing.

4        9.    **Acceptance of Responsibility.** At sentencing, if the Court concludes

5    Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant

6    to U.S. Sentencing Guidelines Section 3E1.1(a) and Defendant's offense level is 16 or

7    greater, the United States will make the motion necessary to permit the Court to decrease

8    the total offense level by three levels pursuant to U.S. Sentencing Guidelines Sections

9    3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying

10   the United States of Defendant's intention to plead guilty, thereby permitting the United

11   States to avoid preparing for trial and permitting the Court to allocate its resources

12   efficiently.

13       10.    **Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of

14   Criminal Procedure 11(c)(1)(B), the United States agrees to recommend that the term of

15   imprisonment to be imposed by the Court at the time of sentencing be a term of 120

16   months. Defendant is free to make any recommendation permitted by law. Defendant

17   understands that the United States' recommendation is not binding on the Court and the

18   Court may reject the recommendation and may impose any term of imprisonment up to

19   the statutory maximum penalty authorized by law. Defendant further understands that

20   Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the

21   Court. Except as otherwise provided in this Plea Agreement, the parties are free to

22   present arguments regarding any other aspect of sentencing.

23       11.    **Restitution.** The parties agree that they both will recommend that the Court

24   find that ordering restitution in this case is impracticable, given the large number of

25   victims in the case and the fact that the process of resolving necessary factual issues

26   would greatly complicate and delay the sentencing process. Defendant understands that

27   the United States intends to establish a remission program through which victims may

Plea Agreement - 9
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

apply for, and potentially receive, compensation from forfeited funds to compensate their losses. Defendant agrees that he will not himself apply for remission, and that none of his family members is entitled to remission for any losses.

12.    **Forfeiture of Assets.** Defendant understands that forfeiture of property is part of the sentence that must be imposed in this case. Defendant agrees to forfeit, both individually and in any other capacity, to the United States immediately all of his right, title, and interest in any property, real or personal, which constitutes or is derived from proceeds traceable to Defendant's commission of *Conspiracy to Commit Wire Fraud*, as charged in Count 1 of the Indictment. Such property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), and includes the following property.

a.    all funds and virtual currencies, and any virtual currencies derived therefrom, seized from Kraken account -7YVY held in the names of Digital Ledger OÜ, including the following:

      i.    approximately 622.1105291939 ETH;

      ii.    approximately 18.82103797 BTC;

      iii.    approximately 1,330.61503 DAI;

      iv.    approximately 1,280.592419 USDC;

      v.    approximately 1,280.150298 USDT;

      vi.    approximately 171.18458 MATIC;

      vii.    approximately 201.70357 ETHW;

      viii.    approximately 634.80000 LUNA2;

      ix.    approximately $28,815.52 in United States funds; and

      x.    approximately €150,099.73 converted to $149,999.89 in United States funds;

1          b.      all virtual currencies, and any virtual currencies derived therefrom,

2   seized from Binance account -3139 held in the name of Sergei Potapenko, including the

3   following:

4                  i.      approximately 172,725.00 GRT;

5                  ii.     approximately 29,769.00 ZRX;

6                  iii.    approximately 1,817,784.00 DNT;

7                  iv.     approximately 5,808.17 FTT;

8                  v.      approximately 735,203.6429 CELR;

9                  vi.     approximately 47,554.00 BAT;

10                 vii.    approximately 4,310,731.00 REEF;

11                 viii.   approximately 4,907,861,172.00 SHIB;

12                 ix.     approximately 3,306.281703 USDT;

13                 x.      approximately 374,589.0993 DOGE;

14                 xi.     approximately 3,057.575074 SOL;

15                 xii.    approximately 45,135,178.359281 LUNC;

16                 xiii.   approximately 395,258.8628 ADA;

17                 xiv.    approximately 1,110.31712273 FIL;

18                 xv.     approximately 11,664.93 XNO; and

19                 xvi.    approximately 137.96818465 BNB;

20         c.      all virtual currencies, and any virtual currencies derived therefrom,

21   seized from Binance account -0399 held in the name of L.K. , including the following:

22                 i.      approximately 0.05300295 BTC;

23                 ii.     approximately 34,952.093573 XRP; and

24                 iii.    approximately €4,987;

25         d.      all virtual currencies, and any virtual currencies derived therefrom,

26   held by BlockFi in account -0718 in the name of Burfa Media OÜ, account -cf50 in the

27

Plea Agreement - 11
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  name of Polybius Ventures OÜ, account -9421 in the name of Sergei Potapenko, and

2  account -6a6f in the name of Polybius Foundation OÜ, including the following:

3          i.     approximately 767.7582005 BTC;

4          ii.    approximately 8,690.483675 ETH;

5          iii.   approximately 110,978.71 GUSD;

6          iv.   approximately 30,717.07031 USDC;

7          v.    approximately 0.004712 USDT; and

8          vi.   approximately 1,673.207762 LTC;

9       e.    approximately 12.99381762 BTC, and any virtual currencies derived

10  therefrom, recovered from the wallet with root address 15LUF6ux55kQgsGQVEopdRoS

11  pbrDv5RAEa;

12       f.    approximately 0.23964449 BTC, and any virtual currencies derived

13  therefrom, recovered from the wallet with root address 1ESUUyqG15HaTzisacLdytKxn4

14  7giFzgSc and other change addresses;

15       g.    approximately 4,225.09699905 BCH, and any virtual currencies

16  derived therefrom, recovered from the public address prq08s0s5nclwcsyyfwzhz9cka9qe6

17  eevupzegp6k7;

18       h.    approximately 568.7364785 BTC, and any virtual currencies derived

19  therefrom, recovered from the public address bc1qstdlul6tq738x3m50r69xejfjf33jcup3

20  0pt5e;

21       i.    approximately 654.39092813 BTC, and any virtual currencies

22  derived therefrom, recovered from the public address 3CCxFk5tDkzbbJ6qJ1j3XTchh6yB

23  uNahFd;

24       j.    approximately 147.99 BTC, and any virtual currencies derived

25  therefrom, in the public address bc1qnf5r9szh0akt5fkk8vf3y2s63e6vvq73u4xc7r, held by

26  Sygnum Bank AG in the name of Sergei Potapenko;

27

Plea Agreement - 12
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

k.        approximately 204.05 BTC, and any virtual currencies derived therefrom, in the public address bc1q5d75zlhjsd76m87ahhgllj3vr4cg4fezmfuzv6, held by Sygnum Bank AG in the name of Sergei Potapenko;

l.        approximately 1,086.08 ETH, and any virtual currencies derived therefrom, in the public address 0x13a82e6a6c37A326c6932ecdF7C4466d7FF15A39, held by Sygnum Bank AG in the name of Sergei Potapenko;

m.        approximately 249.43 BTC, and any virtual currencies derived therefrom, in the public address bc1qvc6mattyx2dur32kz7xcj7yc3uthl6njukn257, held by Sygnum Bank AG in the name of Burfa Media OÜ;

n.        approximately 3,375.35 ETH, and any virtual currencies derived therefrom, in the public address 0xe7602EDd3C75299a70078504E1adb529312843B4, held by Sygnum Bank AG in the name of Burfa Media OÜ;

o.        approximately 610.38 BTC, and any virtual currencies derived therefrom, in the public address bc1qm4qfxmwzhjcpdmdv3jsulh04u0dudxazqu2jaf, held by Sygnum Bank AG in the name of Polybius Foundation;

p.        approximately 4,566.88 ETH, and any virtual currencies derived therefrom, in the public address 0x3Cb6Cfb2f065547716F6C8ec9d4bCe5205b8A445, held by Sygnum Bank AG in the name of Polybius Foundation;

q.        all funds and virtual currencies, and any virtual currencies derived therefrom, held in Bittrex Global GmbH account -add7 in the name of Sergei Potapenko, including the following:

i.        approximately 3,943,064.98143873 TRX;

ii.        approximately 1,664,712.75371388 SYS;

iii.        approximately 567,885.60275965 RVN;

iv.        approximately 430,377.46140433 ADA;

v.        approximately 3,943,064.98143873 TRX;

vi.        approximately 1,664,712.75371388 SYS;

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

vii.    approximately 567,885.60275965 RVN;

viii.    approximately 430,377.46140433 ADA;

ix.    approximately 410,744.58833615 DGB;

x.    approximately 183,915.164007 USDT;

xi.    approximately 81,476.92183652 ZRX;

xii.    approximately 53,004.38460837 PIVX;

xiii.    approximately 25,644.77505155 EOS;

xiv.    approximately 24,023.21017581 XTZ;

xv.    approximately 8,274.87950419 BTXCRD;

xvi.    approximately 7,171.79111397 LINK;

xvii.    approximately 5,962.04738641 DOT;

xviii.    approximately 5,452.20725684 EXP;

xix.    approximately 4,826.88272071 BSV;

xx.    approximately 461.39606118 AAVE;

xxi.    approximately 92.51078893 ZEC;

xxii.    approximately 38.75527475 XLM;

xxiii.    approximately 0.94968620 BCHA; and

xxiv.    approximately 0.70110101 BTC;

r.    all funds and virtual currencies, and any virtual currencies derived therefrom, held in Poloniex account -6443 in the name of Sergei Potapenko, including the following:

i.    approximately 804,858.8058581 XRP;

ii.    approximately 415,777.3571873 XFLR;

iii.    approximately 1,429.0335014 XMR;

iv.    approximately 104,190,825.2919770 STR;

v.    approximately 4,751,220,600.9539800 XEC;

vi.    approximately 15,270.3700395 LSK;

Plea Agreement - 14
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1                 vii.     approximately 105,756.9230769 DOGE;

2                 viii.    approximately 3,390,012.4433771 SC;

3                 ix.     approximately 192,006.8668335 XEM;

4                 x.     approximately 187,694.2973336 XYM;

5                 xi.     approximately 249.3801334 ETC;

6                 xii.     approximately 8.9015448 LTC;

7                 xiii.    approximately 10.4223774 OMG;

8                 xiv.    approximately 10.0254068 BOBA;

9                 xv.     approximately 0.0310687 BCHSV; and

10               xvi.    approximately 0.0000339 BTC;

11        s.     all securities, and any funds derived therefrom, seized from AS LHV

12 Pank Long-Term Investment (Growth) Account Number -7956 held in the name of I.P. ,

13 including the following:

14                 i.     approximately 366.87 shares of COINETH;

15                 ii.     approximately 13.30 shares of COINXBE;

16                 iii.    approximately 32.45 shares of INRG;

17                 iv.    approximately 13.84 shares of ISPA; and

18                 v.     approximately 26.63 shares of XAD5;

19        t.     all securities, and any funds derived therefrom, seized from AS LHV

20 Pank Long-Term Investment (Growth) Account Number -4456 held in the name of I.K. ,

21 including the following:

22                 i.     approximately 159.23 shares of COINETH;

23                 ii.     approximately 17.07 COINXBE;

24                 iii.    approximately 172.81 ESP0;

25                 iv.    approximately 47.01 EXXT;

26                 v.     approximately 29.23 XAD5; and

27                 vi.    approximately 25.49 XAD6;

Plea Agreement - 15
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

u.    approximately €2,011,666.67 derived from a bond issued by Ravala Laenud OÜ with International Securities Identification Number EE3300111723 restrained by the Estonian Ministry of Finance;

v.    net proceeds from the sale of funds and securities, and any funds derived therefrom, held in or derived from Pictet and Cie – Luxembourg account number -600200, held in the name of Polybius Foundation, and restrained by the Grand Duchy of Luxembourg, in the amount of approximately €3,301,135.10:

w.    all securities, and any funds derived therefrom, seized from AS LHV Pank Securities account number -8224 held in the name of Sergei Potapenko, including the following;

i.    approximately 3,000.11 shares of COINETH;

ii.    approximately 220.86 shares of COINXBE;

x.    approximately €160,000 seized from Bank Frick account number -3468K000E held in the name of Digital Ledger OÜ;

y.    approximately €65,571.46 seized by Estonian authorities from AS LHV Pank account number -2203 held in the name of Felmaway OÜ;

z.    approximately €10,000.00 seized by Estonian authorities from AS LHV Pank account number -1363 held in the name of Sergei Potapenko;

aa.    the following amounts of currency seized by Estonian authorities from IVAN TURÖGIN:

i.    approximately €110,300.00;

ii.    approximately €10,900.00;

iii.    approximately €6,605.00;

iv.    approximately €1,450.00;

v.    approximately €1,200.00;

vi.    approximately €770.00;

vii.    approximately €606.00;

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

viii.    approximately €250.00; and

ix.    approximately €150.00;

bb.    the following amounts of currency seized from SERGEI POTAPENKO:

i.    approximately €52,000.00;

ii.    approximately €5,100.00; and

iii.    approximately €1,000.00;

cc.    the following amounts of currency seized from Burfa Media OÜ:

i.    approximately €70,000.00;

ii.    approximately €45,000.00;

iii.    approximately €15,800.00;

iv.    approximately €5,180.00;

v.    approximately €1,800; and

vi.    approximately €240.00;

dd.    approximately €21,005.00 in currency seized from Felmaway OÜ;

ee.    the following real properties located in Estonia:

i.    Tartu mnt 83, Kesklinna linnaosa, Tallinn, Harju County (Units: 103, 407, 501, 502, 503, 504, 505, 506, PK5, PK6, PK7, PK34, PK37, PK38, PK39, PK41, PK42, PK43, PK44)

ii.    Kiikri tn 2, Kesklinna linnaosa, Tallinn, Harju County (Units: 32, 42, 47, 54, 65, 66, 70, 71, 72, 76, P-58, P-59, P-61, P-62, P-77, P-78, P-79, P-80, P-81, P-82, P-89, P-90, P-96, P-97, P-98, P-99, P-100, P-101, P-104, P-105);

iii.    Padriku tee 9, Pirita District, Tallinn, Harju County, 3-5 (building no. 3);

iv.    Padriku tee 9, Pirita District, Tallinn, Harju County, 2-2 (building no. 2);

Plea Agreement - 17
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| | v. | Padriku tee 16, Pirita District, Tallinn, Harju County, 4-11 (building no. 4); |
| | vi. | Supluse pst 1, Pirita linnaosa, Tallinn, Harju County; |
| | vii. | Mardisalu tn 2, Peetri alevik, Rae vald, Harju County; |
| | viii. | Mardisalu tn 8, Peetri alevik, Rae vald, Harju County; |
| | ix. | Häälinurme tn 9, Peetri alevik, Rae vald, Harju County; |
| | x. | Lauri tee 9, Pirita District, Tallinn, Harju County; |
| | xi. | Lauri tee 9a, Pirita District, Tallinn, Harju County; |
| | xii. | Villardi tn 11-5, Kesklinna District, Tallinn, Harju County, 5; |
| | xiii. | Villardi tn 11-G4, Kesklinna District, Tallinn, Harju County, G4; |
| | xiv. | Rannasalu tee 81a, Katase Village, Alutaguse Parish, Ida-Viru County; |
| | xv. | Rannasalu tee 81b, Katase Village, Alutaguse Parish, Ida-Viru County; |
| | xvi. | Rannasalu tee 83a, Katase Village, Alutaguse Parish, Ida-Viru County; |
| | xvii. | Rannasalu tee 123, Katase Village, Alutaguse Parish, Ida-Viru County; |
| | xviii. | Võrgu tee, Katase Village, Alutaguse Parish, Ida-Viru County; |
| | xix. | Kaare, Katase Village, Alutaguse Parish, Ida-Viru County; |
| | xx. | Kadaku, Katase Village, Alutaguse Parish, Ida-Viru County; |
| | xxi. | Käbi, Katase Village, Alutaguse Parish, Ida-Viru County; and |
| | xxii. | Rebasesaba tee 6, Pirita District, Tallinn, Harju County, 2; |
| ff. | | the following vehicles located and registered in Estonia: |

Plea Agreement - 18
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

         i.     one 2019 BMW X7 M50D (gray), registered to Burfa Media OÜ;

        ii.    one Lexus RX450H (dark green), registered to Felmaway OÜ;

       iii.   one 2018 Mercedes-Benz AMG G 63 (gray), registered to Ivan Turõgin; and

       iv.   one 2017 Audi SQ7s (gray), registered to Burfa Tech OÜ;

gg.    the following jewelry and associated accessories and documentation seized from the residence of IVAN TURÕGIN:

        i.     one yellow gold Van Cleef & Arpels ring with mark "VCA Au750 51 JE248150";

        ii.    two Van Cleef & Arpels earrings with mark "VCA Au750 JA120995";

       iii.   one yellow gold Cartier bracelet with mark "Cartier 16 DIO527 Au750";

       iv.   one black and dark blue Breitling SuperOcean Chronometer watch with mark "2966207 M13313";

       v.     one Cartier bracelet with mark "Cartier 17 HCL722 Au750";

       vi.    two Cartier earrings with mark "Cartier LXZ671 Au750";

       vii.   one yellow gold Cartier panther-head ring with mark "Cartier 48 BKK875 Au 750";

       viii.  one yellow gold Bulgari jewelry set, including one ring with mark "BVLGARI S85RZ1 S BVL 750" and two earrings with marks "BVLGARI" and "MADE IN ITALY V4KHPA Au750 2337AL";

       ix.    one yellow gold and black Bulgari jewelry set with mark "BVLGARI Au750 2337AL MADE IN ITALY," including

Plea Agreement - 19
United States v. Sergei Potapenko, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    one ring with mark "F5AZAA 53"; two earrings with mark

2    "HA3T66"; and one necklace with mark "AVMTV5";

3    x.    one yellow gold Tiffany & Co. bracelet with two earrings

4    with mark "Tiffany & Co. Au 750 ITALY";

5    xi.    one white gold Cartier bracelet with mark "Cartier 16 JBR282

6    Au 750 D";

7    xii.    one yellow gold Cartier bracelet with mark "Cartier 16

8    GCE463 Au 750";

9    xiii.    one yellow gold Cartier bracelet with mark "Cartier OKZ045

10    Au 750";

11    xiv.    one gold and dark brown Omega Seamaster Professional

12    watch with mark "89029731 Au750 PLANET OCEAN

13    600m/2000ft";

14    xv.    one metallic Hublot wall clock with serial no AL 9283;

15    xvi.    one yellow gold plate with marks "valcambi Suisse" and "1

16    OZ fine gold 999,9 CHI ESSAY EUR FONDEUR

17    AA551597";

18    xvii.    one yellow gold coin in a black box and with mark "35 X7

19    BURFA.26.01.1985-I.T.";

20    xviii.    one yellow gold Chopard jewelry set, including one necklace

21    with mark "Chopard Au 750," one pendant with mark

22    "Chopard 3446166 Au 750 799769," and two earrings with

23    mark "Chopard Au750 839216 3360339";

24    xix.    one yellow gold Chopard jewelry set, including one necklace

25    with mark "Chopard Au 750," one yellow gold pendant with

26    mark "Chopard Au750 3528443 799221 SWISS MADE,"

27    two earrings with mark "Chopard Au750 3529333 839221

Plea Agreement - 20
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

SWISS MADE," and one bracelet with mark "Chopard Au750 MADE IN GERMANY";

xx. two yellow gold Giorgio Visconti earrings with mark "VISCONTI GIORGIO";

xxi. one yellow gold ring with mark "585";

xxii. one yellow gold Pandora bracelet with beads and mark "PANDORA";

xxiii. one yellow gold Bulgari necklace with mark "BVLGARI RKPNHH Au 750";

xxiv. one yellow gold and black Boucheron ring with mark "BOUCHERON Au750 T54 K39250";

xxv. two yellow gold Tiffany & Co. earrings with mark "Tiffany & Co. Au750 PAT NO 6557220";

xxvi. one yellow gold Bulgari watch with mark "BVLGARI FABRIQUE EN SUISSE SP P 35G PO 4571 Au750 18K";

xxvii. one yellow gold Cartier jewelry set with mark "Cartier 52 Au750 1879AR," including one ring with mark "OUA679" and two earrings with mark "OOH511";

xxviii. two yellow gold Cartier earrings with mark "Cartier HYF993 Au750";

xxix. one yellow gold Cartier necklace with panther's head pendant with mark "Cartier ODZ299 Au750";

xxx. one yellow gold Cartier ring with mark "Cartier 52 Au750 DYS525";

xxxi. one black TAG Heuer watch with mark "RZV9969 WAY218B LIMITED EDITION 0899/2500"; and

Plea Agreement - 21
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

xxxii. one yellow gold jewelry set, including one ring with mark "585 ITALY 1234VI ERORO" and two earrings with mark "SUPERORO 1231 VI 585 ITALY";

hh.    the following jewelry and associated accessories and documentation seized from the residence of SERGEI POTAPENKO:

i.    one gold and black Hublot watch with mark "1231833";

ii.    one Rolex watch with marks "P578G452" and "Au750";

iii.    one Rolex watch with mark "355196Y5";

iv.    one Rolex watch with mark "6380X5H0";

v.    one gold and dark blue Omega Speed Master watch with mark "89516154 (Au750)";

vi.    one metallic Tag Heuer watch with mark "WAR2413-0 WWA0521";

vii.    one gold and black Hublot watch with mark "1301642";

viii.    one metallic Zenith El Primero watch with mark "032046400 350786";

ix.    one metallic TAG Heuer watch with mark "CV5111 NO1775835"; and

x.    one metallic Tag Hauer watch with mark "CV2A11 EPB0858"; and

ii.    the following virtual currency miners located in Estonia, along with any associated electronic accessories:

i.    382 P104 miners under a HashCoins label;

ii.    39 M-P106L9-N miners under a Manli label;

iii.    463 Antminer S17+ miners;

iv.    358 Antminer S19j Pro/S19 Pro miners; and

v.    2,546 Antminer S19j Pro miners.

Plea Agreement - 22
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in locating the property; assisting in bringing any property located outside the United States within the jurisdiction of the United States; assisting with any interlocutory sale of the property; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold (other than with the United States' consent), disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim, directly or indirectly, to any such property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated. Further, Defendant waives all constitutional and statutory challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this agreement, including criminal, civil, and administrative forfeiture. Defendant also agrees he will not assist any party who may file a claim to this property in any federal forfeiture proceeding.

13. **Abandonment of Contraband.** Defendant agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

14. **Customer Database.** Defendant agrees that, within seven days after the execution of this agreement, he will produce and/or cooperate with Ivan Turõgin in producing, to the United States what he asserts is both an accurate and the most complete copy of HashFlare's internal customer database reflecting customer transactions that is in his possession or control.

15. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time,

Plea Agreement - 23
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that arise out of the conduct giving rise to this investigation, and to move to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997). Nothing in this paragraph shall be construed as an admission of guilt by Defendant as to the dismissed charges.

16.    **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement; and (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant and/or to seek a sentence that takes such

Plea Agreement - 24
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

17. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable). This includes any procedural challenges to the sentence, including any claim that the procedure employed at sentencing violated Defendant's constitutional rights.

Defendant also agrees that, by entering the guilty plea required by this Plea Agreement, Defendant waives any right to bring a collateral attack against the conviction and sentence, including any restitution or forfeiture order imposed, except as it may relate to the effectiveness of legal representation or a claim of prosecutorial misconduct based on facts unknown or not reasonably discoverable prior to entry of the judgment of conviction.

Defendant acknowledges that certain claims, including certain claims for prosecutorial misconduct, will be barred by operation of law by virtue of his guilty plea,

Plea Agreement - 25
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

independently from this Plea Agreement. This waiver does not preclude Defendant from bringing an appropriate motion to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to claims not subject to the waiver, above) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

18.    **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

19.    **Interdependence of Plea Agreements.** Defendant acknowledges that the United States has conditioned its willingness to enter into this Plea Agreement on the Court's acceptance of the guilty plea and Plea Agreement by co-Defendant, Ivan Turõgin, in this same case. As a result, if either Defendant or Ivan Turõgin fails to enter into, and plead guilty pursuant to the terms of, the respective Plea Agreements, or if either Defendant or Ivan Turõgin later seeks to withdraw his resulting guilty plea, the United States may, at its election, withdraw from either or both Plea Agreements. If the United States chooses to withdraw from this Plea Agreement under these circumstances, Defendant understands that the United States may seek an Indictment against both parties for all crimes for which the United States has sufficient evidence.

20.    **Treaty Transfer.** If Defendant is eligible and applies to transfer his sentence pursuant to the international prisoner transfer program, the United States agrees to support Defendant's transfer application. Defendant acknowledges and understands, however, that the transfer decision rests in the sole discretion of the Office of International Affairs ("OIA") of the Criminal Division of the United States Department

Plea Agreement - 26
*United States v. Sergei Potapenko*, No. CR22-0185RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  of Justice and that the position of the USAO and MLARS is neither binding nor

2  determinative of the positions of other federal agencies or on the final transfer decision of

3  OIA. Defendant further understands that, in addition to OIA, federal law and the

4  underlying transfer treaties require that the receiving foreign government also approve

5  the transfer.

6      21.    **Statute of Limitations.** In the event this Plea Agreement is not accepted by

7  the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement,

8  or Defendant withdraws from this Plea Agreement after it has been accepted by the

9  Court, the statute of limitations shall be deemed to have been tolled from the date of the

10 Plea Agreement to: (1) 30 days following the date of non-acceptance of the Plea

11 Agreement by the Court; or (2) 30 days following the date on which a breach of the Plea

12 Agreement by Defendant is discovered by the United States; or (3) 30 days following the

13 grant of a motion to withdraw from the Plea Agreement.

14     22.    **Completeness of Plea Agreement.** The United States and Defendant

15 acknowledge that these terms constitute the entire Plea Agreement between the parties,

16 except as may be set forth on the record at the change of plea hearing in this matter. This

17 Plea Agreement binds only the USAO and MLARS. It does not bind any other United

18

19 //

20

21 //

22

23 //

24

25

26

27

Plea Agreement - 27
*United States v. Sergei Potapenko*, No. CR22-0185RSL

1  States Attorney's Office or any other office or agency of the United States, or any state or

2  local prosecutor.

3      DATED:  this twelfth day of February, 2025.

5  _____
   SERGEI POTAPENKO
6  Defendant

7  _____
   MARK E. BINI
8  Attorney for Defendant

9  _____
   MARK N. BARTLETT
10 Attorney for Defendant

11 _____
   ANDREW C. FRIEDMAN
12 Assistant United States Attorney

13 _____
   SOK TEA JIANG
14 Assistant United States Attorney

15 _____
   JEHIEL I. BAER
16 Assistant United States Attorney

17 _____
   ADRIENNE E. ROSEN
18 Trial Attorney

19 _____
   DAVID GINENSKY
20 Trial Attorney

27 *WDWA USAO.Plea Agr.Version 14.Released 08.30.20*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970