1

2

3

4

5

6

7

8

9

The Honorable Robert Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

UNITED STATES OF AMERICA,

Plaintiff,

v.

SERGEI POTAPENKO and IVAN
TURÕGIN,

Defendants.

No. 2:22-cr-00185-RSL

**VERIFIED PETITION OF
POLYBIUS FOUNDATION SE,
PILATUS OÜ, AND ANTON
ALTEMENT TO ADJUDICATE
INTEREST IN PROPERTY
PURSUANT TO 21 U.S.C.
§ 853(n)**

17

18

19

20

21

22

23

24

25

26

Polybius Foundation SE ("Polybius"), its 25% shareholder Pilatus OÜ ("Pilatus"), and the sole owner of Pilatus, Anton Altement, (collectively "Petitioners") are victims of defendants Sergei Potapenko and Ivan Turõgin's ("Defendants") fraudulent scheme and respectfully petition this Court under 21 U.S.C. § 853(n) to adjudicate their interest as bona fide purchasers for value in certain assets forfeited to the United States under the Court's March 20, 2025 Preliminary Order (Dkt. No. 174). These assets include funds and virtual currencies held by Polybius and its subsidiaries—property in which Petitioners hold a legally cognizable interest that is distinct from the interests of Defendants and not derived from any unlawful conduct. In support of their petition, Petitioners state as follows:

1.      On October 27, 2022, the Government indicted Defendants for conspiracy to commit wire fraud, wire fraud, and conspiracy to commit money laundering in connection with their company, HashFlare.  Dkt. No. 1.  On February 12, 2025, both Defendants entered plea agreements, Dkt. Nos. 162, 165, and, on March 20, 2025, this Court entered the Preliminary Order forfeiting certain assets to the United States, Dkt. No. 174.   The Government provided notice of the Preliminary Order to Mr. Altement on April 10, 2025.  Mr. Altement accepted service that same day, setting a May 10, 2025 deadline for this petition.  *See* 21 U.S.C. § 853(n)(2).  Upon request, the Government agreed to extend the filing deadline to June 9, 2025.

2.       Petitioners assert an interest in a portion of the forfeited assets owned by Polybius.  Mr. Altement is the sole owner of Pilatus, which in turn owns 25% of Polybius.  Defendants' company Burfa Capital OÜ ("Burfa Capital") holds the remaining 75%.  Mr. Altement also holds a 22.97% interest in Digital Ledger OÜ ("Digital Ledger"), a subsidiary of Polybius.  The Preliminary Order forfeits assets of both Polybius and Digital Ledger, as identified in paragraphs (a), (f)–(h), (n)–(o), (u), and (w) of the Order (collectively, the "Assets").  Dkt. No. 174 at 1–4, 7.  Petitioners seek to adjudicate only their distinct interest in these assets, representing the 25% stake held independently of the Defendants.  They do not seek any portion traceable to the Defendants' interests.

3.      Petitioners are entitled to an ancillary hearing under 21 U.S.C. § 853(n) to establish their interests in the Assets.  The Preliminary Order itself acknowledges Polybius's ownership of the assets identified in paragraphs (a), (n)–(o), (u), and (w).  The assets in paragraphs (f)–(h) also belong to Polybius, although that ownership was not recognized in the Order.  At the hearing, Petitioners will establish ownership of those assets through expert testimony and evidence linking the referenced public addresses to Polybius's BlockFi, Coinbase, and Bitcoin Suisse accounts, as well as transactional tracing demonstrating Polybius's contributions to the funds at issue.

4.      As detailed below, Mr. Altement had no knowledge of Defendants' charged fraudulent conduct at the time he acquired his interest in Polybius in March 2018.  His prior contact with Defendants was limited and unrelated to the misconduct underlying their indictment.

5.      Since the Defendants' indictment, Mr. Altement has offered significant assistance to the Government.  Critically, he participated in a voluntary proffer on January 26, 2022, and helped identify several assets now subject to forfeiture under the Preliminary Order.

6.      Petitioners do not dispute that Defendants' interests in the assets identified in the Order are subject to forfeiture.  Rather, Petitioners seek relief from the Order only with respect to their independent, innocent ownership interests—amounting to 25% of Polybius' assets.

7.      Following the Defendants' guilty pleas, Mr. Altement, through Pilatus, obtained a court order in Estonia appointing three temporary board members—independent of Defendants—to facilitate the "filing [of] a so-called 'innocent owner' claim with the United States court for the return of assets of Polybius . . . seized" in this case.  March 12, 2025 Order of Tartu District Court Viljandi Courthouse, **Exhibit 1** at 8 & 19, ¶ 26.  The Estonian court also prohibited Defendants from "obstructing the activities of the members of the . . . board" to recover the assets at issue.  March 28, 2025 Order of Tartu District Court Viljandi Courthouse, **Exhibit 2** at 7 & 15, ¶¶ 19, 20.

8.      Petitioners now respectfully request that the Court adjudicate and exempt from forfeiture their legally protected interests in the assets of Polybius and its subsidiaries.

**I.      Mr. Altement Acquires a 25% Interest in Polybius and a 22.97% Interest in Digital Ledger.**

**A.      Mr. Altement Becomes a Strategic Advisor to Polybius**

9.      Mr. Altement and the Defendants grew up in the same small town in Estonia. He later attended UWC Red Cross Nordic, an internationally-renowned boarding school in

1  Norway, before earning a bachelor's degree from Middlebury College on a full scholarship.

2  After earning his degree, Mr. Altement joined Credit Suisse in Zurich, where he advanced

3  rapidly, ultimately serving as a vice president and then a director in the firm's corporate and

4  investment banking division.

5  　　　　10.　　Although Mr. Altement had known the Defendants as teenagers, he had

6  minimal contact with them after leaving Estonia.  He lost touch with Mr. Potapenko entirely

7  and had only occasional contact with Mr. Turõgin until 2010, when he severed ties following

8  a dispute over an unpaid loan of approximately $10,000.

9  　　　　11.　　In December 2016, Mr. Potapenko contacted Mr. Altement about a new

10 venture—Polybius.  Mr. Potapenko described it as an innovative financial institution focused

11 on virtual currencies.  It would raise capital through an initial coin offering ("ICO") of its

12 native PLBT Token.  Mr. Potapenko and his team were seeking strategic partners with

13 experience in finance and operations and suggested that Mr. Altement might play a leadership

14 role following the ICO.

15 　　　　12.　　At that time, Mr. Altement was not looking to leave Credit Suisse.  He was on

16 track for promotion to managing director, a role that would more than double his existing

17 $255,000 salary.  Nonetheless, Mr. Potapenko and other members of the Polybius team

18 emphasized the opportunity and legitimacy of the venture, and assured Mr. Altement that the

19 business was both promising and lawful.  Mr. Altement performed his own extensive due

20 diligence into the project and into the Defendants themselves.  He and Mr. Turõgin also

21 reconciled personally.  Ultimately, based on his assessment and their representations,

22 Mr. Altement agreed to serve as a strategic advisor to Polybius.

23 **B.　　Mr. Altement Helps Polybius with Its Initial Crowdfunding**

24 　　　　13.　　As an advisor, Mr. Altement helped develop the investor materials used for

25 the ICO, including setting participation eligibility, engaging legal counsel, and drafting the

26 whitepaper attached as **Exhibit 3**.  PLBT Tokens were priced at $10 USD each, with bonus

tokens available under certain conditions.  The ICO launched on May 31, 2017, and ran through June 30, 2017.  Although Mr. Altement played a key role in preparing the offering, he did not participate in broader outreach or marketing.  He contacted only a small group from his personal network, resulting in purchases totaling approximately $100,000.  None of those participants were affiliated with the Defendants or with HashFlare, the business at the center of the criminal case.

14.     The ICO ultimately raised approximately $31.65 million from approximately 24,000 participants.  Approximately $4.40 million of PBLT Tokens were purchased by Defendants directly and by Burfa Capital, the company owned solely by Defendants.

## C.     Mr. Altement Acquires Interest in Polybius and Its Subsidiaries

15.     Following the ICO, in July 2017, Mr. Turõgin offered Mr. Altement the position of chief executive officer of Polybius.  At the time, Burfa Capital owned all 2,500 shares of Polybius.  Defendants told Mr. Altement that they were focused on their separate business, HashFlare, and wanted him to run Polybius.  To persuade Mr. Altement to leave his lucrative job at Credit Suisse and take on the risk of heading a startup, Defendants promised Mr. Altement a 25% equity stake in Polybius.

16.     After several weeks of negotiations concerning governance, compensation, and responsibilities, the parties entered into an option agreement granting Mr. Altement the right to acquire 25% of the shares of Polybius in exchange for his services.  A true and correct copy of the option agreement, along with an English translation, is attached as **Exhibit 4**.  It attached and incorporated a new version of Polybius's articles of association, which reflected the parties' agreement on decision-making authority and governance.  A true and correct copy of the articles of association is attached as **Exhibit 5**.  Mr. Altement and Defendants agreed to postpone his exercise of the option until after Mr. Altement left Credit Suisse in February 2018.

17.     On March 8, 2018, Burfa Capital, as the sole shareholder of Polybius, passed a resolution issuing 25% of its shares to Pilatus, Mr. Altement's holding company.  The resolution also superseded the company's prior articles of association with the revised version negotiated in 2017 and named Mr. Altement to the board of directors.  A true and correct copy of the resolution is attached as **Exhibit 6**, and a record of share issuance is attached as **Exhibit 7**.

18.     Following that resolution, Mr. Altement began structuring and formalizing the company's operations.  He established several Polybius legal entities, including Polybius Management GmbH in Switzerland ("PM"), which would become his employer, and Digital Ledger OÜ in Estonia.  To provide equity incentives for employees, Polybius also created Polybius Fintech MidCo OÜ ("MidCo"), a subsidiary structured as an employee share option vehicle with 8.12% of the company's equity having vested before Polybius ceased its operations in December 2022.  Digital Ledger was organized as a wholly owned subsidiary of MidCo.  As a result, Mr. Altement's 25% ownership interest in Polybius translated to a 22.97% indirect interest in both MidCo and Digital Ledger.  A true and correct copy of a chart detailing the corporate structure of Polybius and its subsidiaries is attached as **Exhibit 8.**

**D.     Mr. Altement Serves as Chief Executive Officer and Board Member of Polybius**

19.     After formally joining the company, Mr. Altement assumed day-to-day leadership of Polybius.  The Defendants turned their attention to other ventures, primarily HashFlare, and had no involvement in Polybius's operations during this period.  As CEO, Mr. Altement built Polybius from the ground up.  He hired and managed a team of more than 40 employees—including legal, IT, and finance professionals—and implemented internal procedures to support the company's core functions.  Under his leadership, Polybius applied for payment institution licenses that would eventually allow it to issue loans, facilitate payments, and operate as a full-service digital bank.

20.     While these applications were pending, Polybius expanded into other ventures.  It launched OSOM Finance, Europe's first retail cryptocurrency asset manager.  It also made two early-stage investments in crypto-related businesses in the United Kingdom and Belgium.  Under Mr. Altement's stewardship, Polybius significantly increased its capitalization, growing it fivefold.

21.     Polybius also registered to provide asset management services for cryptocurrency users and served thousands of customers.  At its peak, Polybius's customer base grew to over 25,000 users.  Its user base continued to grow until November 2022, when Defendants were arrested.  The indictment alleged that Defendants may have transferred proceeds from HashFlare to Polybius.  Dkt. No. 1 at 10.  That allegation triggered a cascade of regulatory consequences:  Polybius cryptocurrency registration was revoked, and its bank accounts were frozen, forcing the company to shut down its business.

22.     The fallout was not limited to the company.  Mr. Altement, who had invested his professional reputation in Polybius and had no involvement in HashFlare, faced severe personal and professional consequences.  He has struggled to restore his standing in the investment community and has faced significant difficulty finding new employment opportunities in the wake of Defendants' fraud.

**II.     Petitioners are Bona Fide Purchasers Pursuant to 21 U.S.C. § 853(n)(6).**

23.     Petitioners have an interest in the Assets, and seek relief from the Preliminary Order under 21 U.S.C. § 853(n)(6) as bona fide purchasers for value of the right, title, or interest in the Assets.  Petitioners were not involved in or aware of the criminal conduct described in the indictment or plea agreements.

24.     Defendants pleaded guilty to conspiracy and wire fraud involving transactions carried out through their company HashFlare.  Petitioners had no role in that business, no knowledge of the underlying fraud, and no involvement in the Defendants' conduct.  As part of their pleas, Defendants asserted that some funds raised by HashFlare were transferred to

Polybius entities.  To the extent that Defendants did so, Petitioners had no knowledge of it at the time they acquired their interests.  And any transactions between Polybius and HashFlare customers would have only related to the purchase of PBLT Tokens and were completely separate from HashFlare.

25.    When Mr. Altement signed the September 11, 2017 option agreement and later exercised that option on March 8, 2018 to acquire a 25% ownership stake in Polybius, he did so in good faith, for value, and without any knowledge of the criminal conduct that would later be revealed.  His acquisition was the product of arms-length negotiations, supported by a written agreement, and made in exchange for his leadership, strategic contributions, and services as Polybius's strategic advisor and then chief executive officer.

26.    In light of their substantial legal interests, Petitioners respectfully request that the Court grant the following relief:

a.    grant leave for Petitioners to conduct discovery as necessary to establish their interest in the Assets, pursuant to Fed. R. Crim. P. 32.2.(c)(1)(B);

b.    hold a hearing ancillary to the criminal conviction of Defendants at which Petitioners will present evidence and witnesses on their behalf pursuant to 21 U.S.C. § 853(n); and

c.    amend its Preliminary Order to recognize and exclude the interest of Petitioners in the Assets as set forth herein.

DATED:  June 9, 2025.          **ARETE LAW GROUP PLLC**

By: */s/ Jeremy E. Roller*
Jeremy E. Roller, WSBA No. 32021
Lisa M. Herb, WSBA No. 23161
600 University Street, Suite 2420
Seattle, WA 98101
Phone: (206) 428-3250
Fax:    (206) 428-3251
jroller@aretelaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

lherb@aretelaw.com

Seetha Ramachandran*
William C. Komaroff*
11 Times Square
New York, NY 10036
Phone:  (212) 962-3455
SRamachandran@proskauer.com
Wkomaroff@proskauer.com

Lucas Kowalczyk*
1001 Pennsylvania Ave, N.W.
Suite 600 South
Washington, DC 20004
Phone:  (202) 416-5851
LKowalczyk@proskauer.com

Isaiah D. Anderson*
70 West Madison Street
Suite 3800
Chicago, IL 60602
Phone:  (312) 962-3565
IAnderson@proskauer.com

*Attorneys for Petitioners Polybius Foundation SE,
Pilatus OÜ, and Anton Altement*

*Admitted pro hac vice

**<u>VERIFICATION</u>**

I, Anton Altement, verify, pursuant to 28 U.S.C. § 1746, under penalty of perjury and the laws of the United States of America that the foregoing Petition is true and correct according to the best of my knowledge.

Dated: June 9, 2025

*/s/ Anton Altement*
Anton Altement


**<u>VERIFICATION</u>**

I, Anton Altement, as the sole owner of Pilatus OÜ, verify, pursuant to 28 U.S.C. § 1746, under penalty of perjury and the laws of the United States of America that the foregoing Petition is true and correct according to the best of my knowledge.

Dated: June 9, 2025

*/s/ Anton Altement*
Anton Altement


**<u>VERIFICATION</u>**

I, Martin Pärn, an independent board member, on behalf of Polybius Foundation SE, verify, pursuant to 28 U.S.C. § 1746, under penalty of perjury and the laws of the United States of America that the foregoing Petition is true and correct according to the best of my knowledge.

Dated: June 9, 2025

*/s/ Martin Pärn*
Martin Pärn