# EXHIBIT 1



APOSTILLE
(Convention de La Haye du 5 octobre 1961)

1. Country      Estonia

This public document

2. has been signed by

Kadi Karting

3. acting in the capacity of

The judge

4. bears the seal/stamp of

-

Certified

5. at      Tallinn

6. the      14.03.2025

7. by      Kätlin Aun-Janisk, Notary

8. No      25-7987063451

9. Seal

10. Signature

*This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document and where appropriate, the authenticity of the seal or stamp which the public document bears.*
*This Apostille does not certify the content of the document for which it was issued.*
*This Apostille is signed and can be verified on the Apostille register owned by the Estonian Chamber of Notaries at www.notar.ee/apostill by following the section "Verification of apostille". To verify the apostille use the date of certification and the number of certification.*

aja                12. märts 2025

ation SE vastu Ivan Turõgini
kogust tagasikutsumiseks ja
te   määramiseks   Polybius
sse

ne

35, aadress: Uus tn 2, Jõhvi; e-
)

Advokaadibüroo WIDEN; e-
)

ood: 14202836; asukoht: Tartu
fa.com)

62250; e-post: info@burfa.ee;

d:   38502012230;   e-post:
)

36)  haldusnõukogu  piiratud
40 kohtulahendi jõustumiseni
ndeadvokaat Daniil Savitski
7902130277), kelle volitused
haldusnõukogu liikmetena piiravad Ameerika Ühendriikide kohtule kriminaalasja nr
2:22-CR-00185-RSL (Ameerika Ühendriigid vs Ivan Turõgin ja Sergei Potapenko) raames
Polybius Foundation SE arestitud varade tagasisaamiseks nn „süütu omaniku" nõude
esitamisega ja selleks vajalike toimingute teostamisega ning dokumentide esitamisega
(sealhulgas Polybius Foundation SE-le kuuluvate varade arestist vabastamise ja Polybius
Foundation SE-le tagastamise taotlemisega) ning Eesti Vabariigi äriregistrile Polybius
Foundation SE majandusaasta aruannete esitamisega.

3. **Kohustada Ivan Turõginit ja Sergei Potapenkot või Polybius Foundation SE raamatupidamisdokumente valdavaid isikuid andma Martin Pärnale (isikukood: 37710020012), Daniil Savitskile (isikukood: 38905040251) või Urmas Võimrele üle Polybius Foundation SE (registrikood: 14202836) raamatupidamisdokumendid 10 päeva jooksul alates käesoleva hagi tagamise määruse kättetoimetamisest.**
4. **Tunnistada hagi tagamise määrus viivitamata täidetavaks (TsMS § 367 lg 5).**
5. **Toimetada määrus kätte hageja lepingulisele esindajale ning kostjatele I, II ja III.**

1



# KOHTUMÄÄRUS

*Hagi tagamine*

| | |
|---|---|
| Määruse tegemise koht ja aeg | Tartu Maakohus Viljandi kohtumaja      12. märts 2025 |
| Tsiviilasja number ja hagi ese | 2-25-3440 **Pilatus OÜ hagi Polybius Foundation SE vastu Ivan Turõgini ja Sergei Potapenko haldusnõukogust tagasikutsumiseks ja avaldus uute asendusliikmete määramiseks Polybius Foundation SE haldusnõukogusse** hagimenetlus |
| Menetlustoiming | Hagi tagamise taotluse lahendamine |
| Kohtunik | Kadi Karting |
| Hageja | Pilatus OÜ (registrikood: 14314535, aadress: Uus tn 2, Jõhvi; e-post: pilatus_ou@protonmail.com) |
| Hageja lepinguline esindaja | vandeadvokaat Magnus Braun (Advokaadibüroo WIDEN; e-post: magnus.braun@widen.legal) |
| Kostja I | Polybius Foundation SE (registrikood: 14202836; asukoht: Tartu mnt 43, Tallinn; e-post: info@burfa.com) |
| Kostja II | Ivan Turõgin (isikukood: 38501262250; e-post: info@burfa.ee; ivan@burfa.com) |
| Kostja III | Sergei Potapenko (isikukood: 38502012230; e-post: info@burfa.ee; sergei@burfa.com) |

**RESOLUTSIOON**

1. **Rahuldada hagi tagamise taotlus osaliselt.**
2. **Määrata Polybius Foundation SE (registrikood: 14202836) haldusnõukogu <u>piiratud volitustega</u> ajutisteks liikmeteks kuni tsiviilasjas nr 2-25-3440 kohtulahendi jõustumiseni vandeadvokaat Martin Pärn (isikukood: 37710020012), vandeadvokaat Daniil Savitski (isikukood: 38905040251) ja Urmas Võimre (isikukood: 37902130277), kelle volitused haldusnõukogu liikmetena piirduvad Ameerika Ühendriikide kohtule kriminaalasja nr 2:22-CR-00185-RSL (Ameerika Ühendriigid vs Ivan Turõgin ja Sergei Potapenko) raames Polybius Foundation SE arestitud varade tagasisaamiseks nn „süütu omaniku" nõude esitamisega ja selleks vajalike toimingute teostamisega ning dokumentide esitamisega (sealhulgas Polybius Foundation SE-le kuuluvate varade arestist vabastamise ja Polybius Foundation SE-le tagastamise taotlemisega) ning Eesti Vabariigi äriregistrile Polybius Foundation SE majandusaasta aruannete esitamisega.**
3. **Kohustada Ivan Turõginit ja Sergei Potapenkot või Polybius Foundation SE raamatupidamisdokumente valdavaid isikuid andma Martin Pärnale (isikukood: 37710020012), Daniil Savitskile (isikukood: 38905040251) või Urmas Võimrele üle Polybius Foundation SE (registrikood: 14202836) raamatupidamisdokumendid 10 päeva jooksul alates käesoleva hagi tagamise määruse kättetoimetamisest.**
4. **Tunnistada hagi tagamise määrus viivitamata täidetavaks (TsMS § 367 lg 5).**
5. **Toimetada määrus kätte hageja lepingulisele esindajale ning kostjatele I, II ja III.**

**Edasikaebamise kord**

Käesoleva määrusele võivad menetlusosalised esitada määruskaebuse (TsMS § 390 lg 1, Määruskaebuse esitamine ei peata käesoleva määruse täitmist (TsMS § 390 lg 2). Kirjalik määruskaebus tuleb esitada Tartu Maakohtu Viljandi kohtumaja kaudu Tartu Ringkonnakohtule 15 päeva jooksul alates määruse määruskaebuse esitajale kättetoimetamisest (TsMS §§ 660-661).

## ASJAOLUD

1. Pilatus OÜ on esitanud 05.03.2025 hagi Polybius Foundation SE (edaspidi ka: *PFSE*), Ivan Turõgini ja Sergei Potapenko vastu Ivan Turõgini ja Sergei Potapenko tagasikutsumiseks Polybius Foundation SE haldusnõukogust ja avalduse haldusnõukogusse asendusliikmete määramiseks. Hageja on selgitanud, et on PFSE vähemusaktsionär 25%-lise osalusega. Ülejäänud 75% osalusest kuulub Burfa Capital OÜ-le. Burfa Capital OÜ juhatuse liikmed on Pavel Ivanov, kostja II ja kostja III ning tegelikud kasusaajad on kostja II ja kostja III. Seega on PFSE enamusaktsionär, Burfa Capital OÜ, kostjate II ja III kontrolli all. PFSE on Eestis registreeritud Euroopa äriühing (*Societas Europaea*). PFSE põhikirja p 4.1. kohaselt juhib PFSE-d haldusnõukogu, mis koosneb 3 kuni 5 liikmest *(dtl 272-276)*. EL Nõukogu määruse (EÜ) nr 2157/2001 Euroopa äriühingu (SE) põhikirja kohta rakendamise seaduse § 21 lg 1 sätestab, et haldusnõukogul on kolm liiget, kui põhikiri ei näe ette suuremat liikmete arvu. Seega peab ka seaduse kohaselt olema haldusnõukogu vähemalt kolmeliikmeline. Põhikirja p 4.6. kohaselt võivad kaks haldusnõukogu liiget esindada seltsi ühiselt. PFSE-d esindavad hagiavalduse esitamise hetkel haldusnõukogu liikmetena kostja II ja kostja III. PFSE haldusnõukogu kolmandaks liikmeks olnud Anton Altement astus haldusnõukogust tagasi 29.11.2022.

2. Koos hagiavaldusega esitati hagi tagamise taotlus, mille eesmärgiks märgiti tagada äriühingu Polybius Foundation SE huvide kaitse ja vältida olulise kahju tekkimist. Hageja taotles tagamise korras Polybius Foundation SE haldusnõukogu liikmete Ivan Turõgini ja Sergei Potapenko tagasikutsumist ja nende asemele uute asendusliikmete Michael Abdurrazag Bottjeri, Tatiana Durinina ja Urmas Võimre määramist, kuna kostjad II ja III on tegutsenud väidetavalt huvide konfliktis ning tekitanud ühingule kahju. Samuti nõutakse kostjatelt II ja III hagi tagamise korras Polybius Foundation SE vara, sh 10 624,81 ETH, ja muu vara ning raamatupidamisdokumentide üleandmiseks kohustamist. Hageja on põhjendanud, et kostjad II ja III on teinud olulisi juhtimisvigu ning neil puudub huvide konflikti tõttu motivatsioon tegutseda ühingu parimates huvides. Samuti on kohtu sekkumine vajalik, et võimaldada PFSE nimel esitada õiguslikke nõudeid, sh Ameerika Ühendriikide kohtule nn „süütu omaniku" nõue arestitud varade tagasisaamiseks ja Burfa Media OÜ vastu suunatud nõuete sissenõudmine. Taotletavad abinõud ei koorma kostjaid ebamõistlikult, kuna need on vajalikud PFSE jätkusuutlikkuse tagamiseks ja võimalike kahjude vältimiseks.

3. Hagis ja tagamise taotluses on toodud välja, et 21.11.2022 esitas Ameerika Ühendriikide prokuratuur kostja II ja kostja III vastu süüdistuse vandenõus, pettuses elektrooniliste sidevahendite abil ja vandenõus rahapesu toimepanemiseks. Süüdistus sisaldas ka konfiskeerimise nõuet, mis kohustas kostjaid II ja III süüdimõistmise korral loovutama Ameerika Ühendriikidele mh raha, kinnisvaraobjekte, sõidukeid, krüptoraha ja krüptoraha kaevandamise seadmeid. Kostja II ja III on 12.02.2025 sõlminud Ameerika Ühendriikide Washingtoni läänepiirkonna ringkonnakohtus kohtulikud kokkulepped (*plea agreements*), milles tunnistasid end süüdi elektroonilise kelmuse korraldamises kokkuleppimises (*conspiracy to commit wire fraud*). Süütegude eest, milles kostja II ja kostja III end süüdi tunnistasid, võib määrata kuni 20-aastase vangistuse. Samuti nõustusid kostjad II ja III loovutama Ameerika Ühendriikidele PFSE ja tema tütarettevõtete vara, kuigi PFSE-l puudub hageja väitel otsene seos nende süüdistustega. Kohtuliku kokkuleppe tingimuste tõttu on kostjatel II ja III keelatud vaidlustada vara konfiskeerimist või esitada PFSE nimel süütu omaniku nõuet. Sellega on kostjad II ja III kahjustanud ühingu huve ning väärkasutanud vara enda isiklike huvide ja kergema karistuse saamiseks. Lisaks on nad jätnud alates 2021. aastast esitamata majandusaasta aruanded ning pole

2

kutsunud kokku korralist üldkoosolekut, mis seab PFSE sundlõpetamise riski alla. Nende võimalik kuni 20-aastane vangistus muudab ka edaspidise juhtimiskohustuste täitmise võimatuks. Kostjad II ja III on võtnud kohustuse mitte esitada otse või kaude mistahes nõudeid seoses konfiskeeritava varaga (*vt hagiavalduse lisa 6, lk 23 rida 1 jj ja lisa 8 ibid; eestikeelne tõlge vt Lisa 7 lk 23 rida 1 jj ja lisa 9 ibid*). Eelviidatud kohtulike kokkulepete tulemusel on Ameerika Ühendriikide valitsus nõustunud esitama taotluse, et kostjatele II ja III ei mõistetaks karistuseks enam kui kümme aastat vangistust.

4. Hageja märkis esialgses hagi tagamise taotluses, et kohus saab määrata äriühingu juhtorganisse uue liikme ainult välja langenud liikme asemele, kui esineb mõjuv põhjus, näiteks püsiv huvide konflikt või oht, et äriühingule tekib kahju. PFSE huvides oleks arestitud varade tagastamise nõudmine, kuid olemasolevad haldusnõukogu liikmed ei saa seda teha püsiva huvide konflikti tõttu. Seetõttu on asendusliikmete määramine vajalik, et PFSE saaks esindada oma huve Ameerika Ühendriikides toimuvas menetluses. Ilma asendusliikmeteta on PFSE-le kahju tekkimine vältimatu, sest puudub juhtorgan, kes suudaks tagada ühingu vara kaitse ja säilimise.

5. Kohus jättis 7.03.2025 määrusega hagi tagamise taotluse rahuldamata *(dtl 893-896)*. Kohus märkis, et hageja ei olnud taotlust haldusnõukogu liikmete tagasikutsumiseks ja asendusliikmete määramiseks hagi tagamise korras põhjendatud, kuivõrd hageja ei tõendanud kahju tekkimise ohtu (i); hageja ei esitanud asendusliikmetena usaldusväärseid kandidaate (ii); hageja ei tõendanud, et puudub võimalus lahendada olukorda muude äriühingu siseste (s.o ühinguõiguslike) meetmete abil (iii).

6. Hageja esitas 11.03.2025 uue hagi tagamise taotluse, milles toob välja täiendavad põhistused tagamise vajalikkuse osas *(dtl 748-758)*. Hageja taotleb hagi tagamisena kutsuda hagi tagamise korras Ivan Turõgin ja Sergei Potapenko tagasi Polybius Foundation SE (registrikood: 14202836) haldusnõukogust ja määrata Polybius Foundation SE (registrikood: 14202836) haldusnõukogu asendusliikmeteks kuni käesolevas kohtuasjas tehtava lahendi jõustumiseni vandeadvokaat Martin Pärn, vandeadvokaat Daniil Savitski ja Urmas Võimre. Lisaks taotletakse kostjate II ja III kohustamist andma Polybius Foundation SE-le üle äriühingule kuuluv vara, sh kanda Polybius Foundation SE-le kuuluva virtuaalvääringu rahakotis (aadress: 0xfF575a22975CC413771825EB84c163189A4d5D22) olevad vahendid (hagi tagamise taotluse esitamise seisuga 10,624.81 ETH) ja andma Polybius Foundation SE haldusnõukogu asendusliikmetele üle Polybius Foundation SE raamatupidamisdokumendid 10 päeva jooksul alates hagi tagamise määruse kättetoimetamisest.

7. Hageja selgitab 11.03.2025 taotluses täiendavalt, et 07.03.2025 selgus, et PFSE vara asutakse kostjate II ja III suhtes USA-s toimetatava kriminaalmenetluse raames kiirendatud korras konfiskeerima. Seega ei ole PFSE-l Ameerika Ühendriikides oma vara kaitseks nõude esitamiseks aega kuni 2025. aasta septembrini, vaid nõude esitamise vajadusega tuleb arvestada sisuliselt järgmise 30 päeva jooksul. Hageja palus Ameerika Ühendriikides Freeh, Sporkin & Sullivan advokaadibüroos tegutsevalt vandeadvokaadilt Jennifer Arbitter Williamsilt infot kostjate II ja III kriminaalmenetluse kohta. Vandeadvokaat J. A. Williams kinnitas 09.03.2025 e-kirjas *(dtl 759-844, s.o Jennifer A. Williamsi kinnituskiri koos lisamaterjalidega ja selle tõlge)* mh, et 07.03.2025 esitas Ameerika Ühendriikide justiitsministeerium kostjate II ja III suhtes toimetatavas kriminaalmenetluses taotluse kõikide varade eelkonfiskeerimiseks, taotledes määruse tegemist millega loetaks, et kõik süüdistavate huvid arestitud varades on loovutatud Ameerika Ühendriikidele kooskõlas sõlmitud kohtulike kokkulepetega *(dtl 845-886, s.o taotlus varade eel- konfiskeerimiseks ja selle tõlge)*. Kui kohus vastava määruse teeb, alustab Ameerika Ühendriikide justiitsministeerium esimesel võimalusel tsiviilmenetlustega võimaldamaks kolmandatel isikutel piiratud aja jooksul esitada süütu omaniku nõudeid *(J. A. Williams kirja lk 3; punkt B)*. Arestitud vara omanikuna on Polybiusel (PFSE-l) õigus esitada „süütu omaniku" nõue 30 päeva jooksul Ameerika Ühendriikide justiitsministeeriumi konfiskeerimisteatest arvates seejuures: (a) dokumentaalselt tõendades PFSE omandiõigust arestitud varadele; (b) kinnitades,

3

et PFSE on süütu omanik, sest PFSE ei osalenud kuriteo toimepanemises ega tea~~ kriminaalsest tegevusest. „Süütu omaniku" nõuet ei saa esitada pärast 30 päeva möödumist. tähtaeg lastakse mööda, loetakse PFSE loobunuks õigusest „süütu omaniku" nõude esitamise~. Süüdistatavatel, s.t kostjatel II ja III, on keelatud vaielda vastu PFSE-le kuuluvate varad~ konfiskeerimisele, osalemast „süütu omaniku" nõudes, osalemast mistahes tagasi- või hüvitisnõudes ning mistahes muul viisil takistada Ameerika Ühendriike kohtulikes kokkulepetes loetletud arestitud varade konfiskeerimisel. *„Teisisõnu, süüdistatavad ei tohi üheski menetluses – USAs või väljaspool seda – võtta isiklikul tasandil või aktsionärina, juhatuse liikmena või ettevõtte juhina positsiooni, mis oleks vastuolus nende nõustumisega arestitud varade üleandmise konfiskeeritavuse ja konfiskeerimisega. Kui nad seda tingimust rikuvad, on valitsusel õigus kokkuleppest taganeda, taastada süüdistus kõigi 18 episoodi osas ning nõuda kümnetesse miljonitesse ulatuvat rahalist karistust ja kümnete aastate pikkust vangistust. See tähendab, et Potapenkol ja Turõginil on keelatud esitada ja ka toetada PFSE süütu omaniku nõuet või tagastamisnõuet" (vt J. A. Williamsi e-kirja lk 4, punkt 2). PFSE-l on USA seaduse alusel õigus esitada süütu omaniku nõue ja/või taotleda arestitud varade tagastamist vältimaks nende konfiskeerimist USA valitsuse poolt. Kuivõrd süüdistatavatel Turõginil ja Potapenkol on keelatud selle õiguse maksmapanek on nende ja Polybiuse huvide vahel püsiv huvide konflikt. /.../ See konflikt vajab kiiret lahendamist, sest on esitatud taotlus varade eel-konfiskeerimiseks. Süütu omaniku nõue tuleb esitada 30 päeva jooksul konfiskeerimisteate tegemisest ning see nõue vajab märkimisväärset ettevalmistust. Polybiusel tuleb esitada üksikasjalik faktiliste asjaolude kirjeldus tõendades vaidlusaluste varade omandiõigust, tõendada seda, et ta ei ole kuritegelikult käitunud, oma märkimisväärseid pingutusi seadusliku majandustegevuse käivitamisel ning selle toimimisel eraldiseisvana ja sõltumatult kahe süüdistatava tegudes*t (vt kirja lk 4, punkt C).

8. Hagejale teadaolevalt on kostjate II ja III alaline elukoht Ameerika Ühendriikide Washingtoni osariigis, mida tõendavad Ameerika Ühendriikide Washingtoni läänepiirkonna ringkonnakohtu määrused kostjate II ja III eelvangistusest vabastamise tingimuste kohta *(vt hagiavalduse lisad 14-19)*. Hagiavalduse lisaks 14 ja 15 olevatest määrustest nähtub, et (i) kostjad II ja III on loovutanud oma passid *(vt määruste punkte 2)* ning mistahes reisimine on piiratud Washingtoni osariigi läänepiirkonnaga *(vt määruste punkte 7)*. Kostjad II ja III ei saa seega Washingtoni osariigist lahkuda. Täidetud ei ole SEPS § 21 lg-s 5 sätestatud tingimus, mille kohaselt peab vähemalt poolte haldusnõukogu liikmete elukoht olema Eestis, mõnes teises Euroopa Majanduspiirkonna liikmesriigis või Šveitsis. Kostjad II ja III ei ole kohaselt korraldanud PFSE majandusaasta aruannete esitamist. Viimane esitatud majandusaasta aruanne on esitatud 2020. aasta kohta *(vt hagiavalduse lisa 4, lk 3)*. Registripidaja võib PFSE sundlõpetada. Kostjad II ja III kui PFSE haldusnõukogu liikmed ostavad PFSE ja PFSE väikeaktsionärist hageja vara arvel endale Ameerika Ühendriikidelt kergemat karistust. PFSE-le kuuluva vara üleandmisega Ameerika Ühendriikidele panevad kostjad II ja III toime KarS § 217² kuriteo ehk usalduse kuritarvitamise, sest käsutavad lojaalsuskohustust rikkudes PFSE vara endi huvide teenimiseks ja selliselt, et PFSE-le mingit hüve ega vastusooritust ei järgne.

9. Haldusnõukogu liikmete tegutsemist huvide konfliktis ja PFSE-le suure kahju tekkimise ohtu Ameerika Ühendriikide poolt varade konfiskeerimise tulemusel on hageja põhistanud ja tõendanud kostjate II ja III poolt allkirjastatud kohtulike kokkulepetega.

10. Hageja viitab, et kohtupraktikas on peetud võimalikuks vaidlusaluse õigussuhte esialgseks reguleerimiseks määrata äriühingu juhtorgani liikmeid. Riigikohus on asunud seisukohale, et kohus võib hageja taotlusel hagi tagada selleks, et tagada äriühingu võimalus tegutseda efektiivselt kuni vaidluse lõpuni ka muude kui TsMS §-s 378 loetletud hagi tagamise abinõudega. See, et äriühingu juhtorganite liikmete määramist kohtu korras reguleerib eraldi menetlusena TsMS 59. peatükk, ei välista kohtu õigust määrata vaidlusaluse õigussuhte esialgseks reguleerimiseks äriühingu juhtorgani liikmeid. Eeltoodust tulenevalt on kohtul õigus esialgse õiguskaitse korras määrata äriühingule haldusnõukogu asendusliikmeid. Ühtlasi on hilisemas Riigikohtu praktikas hagita asjas sellekohane seisukoht täiendavat kinnitamist leidnud.

4

11. Hageja selgitab, et asendusliikmete määramisega hagi tagamise korras ei saavutataks põhihagi eesmärki. Üheks hagi nõudeks on asendusliikmete määramine kohtu äranägemisel. Hagi tagamise korras ei lahendataks vaidlust lõplikult, vaid määrataks asendusliikmed, kes on võimelised, suutelised ja motiveeritud PFSE varalisi huve kaitsma ning raamatupidamist korraldama. Hageja on tõendanud, et kostjad II ja III on end süüdi tunnistanud kurjategijad, kes kasutavad PFSE vara endale leebema kriminaalkaristuse ostmiseks Ameerika Ühendriikidelt ning on võtnud endale Ameerika Ühendriikidega sõlmitud kohtulike kokkulepetega kohustuse PFSE varalisi huve mitte kaitsta. Olukorras, kus kostjad II ja III eelistavad enda huve PFSE huvidele, on asendusliikmete määramine hagi tagamise korras põhjendatud.

12. Konfiskeeritud vara omanikuna on PFSE-l I õigus esitada USA kohtus nn süütu omaniku nõue. Sellise nõude esitamise tähtaeg on 30 päeva jooksul USA justiitsministeeriumilt konfiskeerimisteate saamisest, mis vastavalt vandeadvokaat J.A. Williamsi selgitustele võib leida aset sisuliselt igal hetkel alates käesoleva avalduse esitamisest. Seetõttu on õiguskaitsevajadus asendusliikmete määramise küsimuses äärmiselt ajakriitiline. Nõude esitamine eeldab mitmete täiendavate asjaolude väljaselgitamist, tõendite kogumist ja põhjalikku hindamist. Samuti tuleb koostada ja auditeerida puuduolevad majandusaasta aruanded. Eduka nõude esitamiseks on vältimatult vajalik alustada eelviidatud tegevustega esimesel võimalusel. See on võimalik vaid juhul, kui PFSE-le määratakse asendusliikmed hagi tagamise korras. Ajakriitilisus ning kostjate II ja III poolt võetud kohustus aidata PFSE varade USA poolt konfiskeerimisele igakülgselt kaasa on põhjuseks, miks ei ole võimalik lahendada tekkinud huvide konflikti olukorda äriühingu siseste mehhanismidega. PFSE põhikirja p 5.2 kohaselt kutsub üldkoosoleku kokku haldusnõukogu kui seaduses ei ole sätestatud teisiti. Hüpoteetilises olukorras, kus hageja esitaks PFSE aktsionärina nõude erakorralise üldkoosoleku kokkukutsumiseks päevakorraga 1) haldusnõukogu liikmete tagasikutsumine ning 2) haldusnõukogu liikmete valimine, ei oleks eluliselt usutav eeldada, et kostjad II ja III 1) Kutsuksid üldkoosoleku kokku, sest päevakorda arvestades looksid nad sellega võimaluse endi tagasikutsumiseks ja uue haldusnõukogu liikmete valimiseks ning seeläbi võimaluse, et PFSE asub varade konfiskeerimisele vastu vaidlema ning USA-s nõudeid esitama. Selliselt rikuksid kostjad II ja III USA-ga sõlmitud kohtulike kokkulepete tingimusi ja riskiksid kümnete miljonite dollarite ulatuses rahaliste karistuste ning kümnete aastate pikkuse vangistusega; 2) Hääletaksid koosolekul endi tagasikutsumise ja uute liikmete valimise poolt. Põhjused, miks kostjad II ja III seda ei teeks, on samad – neid ähvardaks kümnete miljonite dollarite ulatuses rahalisi karistusi ning kümnete aastate pikkune vangistus. Vastupidine käitumine ei oleks eluliselt usutav ega inimloomusele omane.

13. Kui kostjad II ja III hageja nõudel erakorralist üldkoosolekut kokku ei kutsu, on hagejal ÄS § 292 lg 2 alusel õigus ise koosolek kokku kutsuda, seda aga alles siis, kui hageja nõude saamisest on möödunud üks kuu ja ka seejärel põhikirja p 5.6 kohaselt ühenädalase etteteatamisega. Kostjad II ja III ei hääletaks ka siis endi tagasikutsumise ja uue haldusnõukogu liikmete valimise poolt ning nii hageja kui PFSE oleks pärast ühe kuu ja ühe nädala möödumist samas olukorras. Selleks ajaks on PFSE poolt süütu omaniku nõude esitamise 30-päevane tähtaeg aga juba minetatud ning PFSE-le 290 miljoni euro väärtuses kahju tekkinud. Hageja on oma seadusliku esindaja avalduse (hagiavalduse lisa 22) ning sellele lisatud dokumentidega põhistanud, et PFSE-l on Burfa Media OÜ vastu 2022. aasta laenulepingutest tulenev nõue suurusjärgus 160 miljonit eurot. Burfa Media OÜ võimaliku aegumise vastuväite ja PFSE-le suure ja pöördumatu kahju tekkimise vältimiseks on vajalik alustada nõuete sissenõudmist aegumistähtaja jooksul. Ühtlasi on hageja enda arvates usutavalt põhistanud vara (10 624,81 ETH, väärtusega üle 20 miljoni euro) kuuluvuse PFSE-le hagiavalduse lisaks 22 oleva Anton Altementi (endine PFSE juhatuse liige) kinnituskirja ning sellele lisatud dokumentidega. Kostjate II ja III valduses on PFSE-le kuuluvat vara, mille säilimise tagamist ei saa usaldada PFSE-ga huvide konflikti langenud ja lojaalsuskohustust eiravatele haldusnõukogu liikmetele. Samuti esineb risk, et registripidaja algatab majandusaasta aruannete esitamata jätmise tõttu PFSE sundlõpetamise.

14. PFSE haldusnõukokku asendusliikmete määramine tagab varade säilimise ja aitab vä[i] ühingule olulise kahju tekkimist menetluse kestel. Asendusliikmetel on PFSE seadusjärgs[e] esindajatena võimalik tagada, et PFSE nimel esitataks USA-s süütu omaniku nõue ning taotletak[s] PFSE-le kuuluvate varade arestist vabastamist ning tagastamist. Samuti on asendusliikmete[l] võimalik tagada, et PFSE esitaks laenulepingute alusel nõuded Burfa Media OÜ vastu viisil ning tähtaja jooksul, mis välistaks aegumisele tuginemise võimaluse Burfa Media OÜ poolt. Asendusliikmete ülesandeks oleks ka korraldada PFSE raamatupidamist ning tagada majandusaasta aruannete esitamine, et PFSE-d ei sundlõpetataks.

15. Hageja palub määrata kuni käesolevas asjas tehtava lõpplahendi jõustumiseni PFSE haldusnõukogu liikmeteks vandeadvokaat Martin Pärn, vandeadvokaat Daniil Savitski ja Urmas Võimre. Isikud on andnud endi PFSE haldusnõukogu liikmeteks määramiseks vajalikud nõusolekud, milles kinnitavad, et vastavad seadusega kehtestatud nõuetele *(dtl 888 – M. Pärna nõusolek; dtl 890 – D. Savitski nõusolek; dtl 482 – U. Võimre nõusolek).* Kandidaadid ei soovi endi kulude ja tasu katteks ettemaksu. M. Pärn ja D. Savitski on vandeadvokaadid, kelle sõltumatus on kindlalt tagatud. U. Võimre tegutseb nii saneerimisnõustaja kui pankrotihaldurina. Kohtute varasemas praktikas on asendusliikmeteks nimetatud ka pankrotihaldureid, sest pankrotihaldurid on kohtute usaldusisikud, kellele – nagu ka advokaatidele – kehtivad kõrgendatud kõlbelised ja eetilised nõudmised ning kelle sõltumatuses ning erapooletuses ei ole põhjust kahelda. M. Pärn on vandeadvokaat ja Eesti Advokatuuri liige alates 18. aprillist 2006. Ta on Advokaadibüroo Naur & Pärn OÜ juhatuse liige ja partner ning tegutseb pankrotihaldurina alates 1. jaanuarist 2010. Tänu oma pikaajalisele kogemusele ja laialdastele erialastele teadmistele (sh tegutseb M. Pärn CoinLoan OÜ pankrotihaldurina ning valitseb CoinLoan krüptovääringutest koosnenud pankrotivara väärtuses enam kui 100 miljonit eurot), on tal vajalik pädevus PFSE haldusnõukogu asendusliikme ülesannete täitmiseks. D. Savitski on vandeadvokaat ja Eesti Advokatuuri liige alates 11. veebruarist 2014. Ta on advokaadibüroo K&S Legal juhtivpartner ning vastutab krüptovarade ja äriõiguse valdkonna eest. Tema erialased teadmised ja ulatuslik kogemus teevad temast sobiva kandidaadi PFSE haldusnõukogu asendusliikme ülesannete täitmiseks. U. Võimre on haldusnõukogu liikmeks sobiv kandidaat, sest tal on pikaaegne kogemus saneerimisnõustaja ja pankrotihaldurina ning ta oskab seetõttu korraldada nõuete esitamist Burfa Media OÜ vastu. U. Võimre tegutseb ka finantseksperdina (sh registreeritud eraeksperdina), valdab väga heal tasemel raamatupidamisele kohalduvaid nõudeid ja oskab korraldada PFSE majandusaasta aruannete koostamist.

16. Hageja palub kohustada kostjaid II ja III andma hagi tagamise korras määratavatele PFSE asendusliikmetele üle ühingu vara, s.o hagejale teadaolevalt kostjate valduses oleva, kuid PFSE-le kuuluva 10 624,81 ETH ehk krüptovääringu nimetusega *ethereum*. Tegemist on varaga, mida ei ole Ameerika Ühendriikides toimuvate menetluste käigus arestitud ning mida sealse kriminaalmenetluse dokumentides üleantava PFSE varana ei nimetata. Kuivõrd kostjate II ja III valduses võib olla ka muud PFSE-le kuuluvat vara, palub hageja hagi tagamise raames kohustada kostjaid II ja III ka kogu muu vara üleandmiseks. Kuivõrd kostjad II ja III on väärkasutanud PFSE vara enda isiklikes huvides ja endale määratava karistuse täitmiseks, esineb oht, et kostjad II ja III jätkavad ühingu vara enda huvides kasutamist. Seetõttu palub hageja kohustada kostjaid II ja III andma 10 624,81 ETH-d ja ka muu vara üle PFSE-le. Vara üleandmise ja vastuvõtmise viiksid läbi kohtu määratavad asendusliikmed tagades protsessi tehnilise turvalisuse (10 624,81 ETH-d on kostjatel II ja III võimalik kanda asendusliikmete poolt ülesseatavasse külma rahakotti).

17. Lisaks palub hageja kohustada kostjaid II ja III andma üle PFSE raamatupidamisdokumendid 10 päeva jooksul alates hagi tagamise määruse kättetoimetamisest. Dokumendid on vajalikud ühingu tegevuse jätkumise ning raamatupidamis- ning aruandluskohustuste täitmise tagamiseks. Raamatupidamisdokumentide üleandmist-vastuvõtmist korraldaksid PFSE-le tagamise korras määratavad asendusliikmed.

6

18. Taotletavad hagi tagamise abinõud ei koorma hageja hinnangul kostjaid enam kui hageja põhjendatud huvide kaitseks vajalik. Ühtlasi puuduvad kostjaid vähem koormavad võimalikud abinõud. Hageja on veenvalt põhistanud ja tõendanud, et PFSE haldusnõukokku asendusliikmete määramisega vaidluse ajaks on võimalik ära hoida pöördumatu ja olulise kahju tekkimine PFSE-le. Asendusliikmetel on võimalus korraldada süütu omaniku nõude esitamine USA-s, samuti asuda korraldama PFSE raamatupidamist ning tagada auditeeritud majandusaasta aruannete esitamine vältimaks PFSE sundlõpetamist. Lisaks saavad asendusliikmed asuda korraldama nõude esitamist Burfa Media OÜ kui PFSE võlausaldaja vastu suurusjärgus 160 miljonit eurot. PFSE-l ja PFSE vähemusaktsionärist hagejal puuduvad alternatiivsed võimalused PFSE vara kaitsmiseks. Hageja on põhistanud, et hagi tagamise korras asendusliikmete määramine on vältimatult vajalik ja puudub võimalus lahendada olukord muude, äriühingu sisestest mehhanismidest lähtuvate meetmete kaudu. Vara üleandmiseks kohustamine ei koorma kostjaid II ja III ebamõistlikult, sest tegemist on PFSE varaga, mille hoidmiseks faktiliselt väljalangenud ning seaduse nõuetele mittevastava haldusnõukogu valduses puudub põhjendus. PFSE raamatupidamise korraldamise ning aruannete esitamise vajadus asendusliikmete poolt on ilmne nagu ka selleks kostjalt II ja III dokumentide saamise vajadus. Varakäsutused teenivad üksnes kostjate II ja III huve. Hageja vajab õiguskaitset, et ebaseaduslikke varakäsutusi ära hoida.

## KOHTU PÕHJENDUSED

19. Kohus leiab, et taotlus hagi tagamiseks tuleb rahuldada osaliselt.

20. Hagi tagamisel tuleb kohtul kontrollida, kas hagi tagamise taotlus vastab TsMS § 381 lg-s 1 sätestatud nõuetele (sh on esitatud TsMS §-s 377 nimetatud asjaolud), kas hagiavaldus vastab TsMS § 363 lg 1 p-des 1–3 sätestatud nõuetele, kas hagi on lubatav (eelkõige TsMS § 371 lg 1, § 423 lg 1, § 428) õiguslikult perspektiivikas (TsMS § 371 lg 2, § 423 lg 2) ning kas nõude ja selle tagamise aluseks olevad asjaolud on põhistatud (TsMS § 235 ja § 381 lg 2) (vt RKTKm nr 3-2-1-83-16, p-d 13–18). Hageja nõue on õiguslikult perspektiivitu juhul, kui hagis esitatud asjaolude tõendatuse korral ei oleks nõuet võimalik rahuldada ühelgi materiaalõiguslikul alusel (RKTKm nr 3-2-1-193-13, p 12). Kohus on seisukohal, et hagi võib olla eelnimetatud normide tähenduses õiguslikult perspektiivikas.

21. TsMS § 377 lg 2 sätestab, et sellise hagi tagamiseks, mille esemeks ei ole rahaline nõue kostja vastu, võib kohus hageja taotlusel esialgselt reguleerida vaidlusalust õigussuhet, eelkõige asja kasutusviisi, kui see on vajalik olulise kahju või omavoli vältimiseks või muul põhjusel. Seda võib teha sõltumata sellest, kas on alust arvata, et hagi tagamata jätmine võib raskendada kohtuotsuse täitmist või teha selle võimatuks.

22. Kohus nõustub hageja põhjendusega selles, et Riigikohus on asunud seisukohale, et kohus võib hageja taotlusel hagi tagada selleks, et tagada äriühingu võimalus tegutseda efektiivselt kuni vaidluse lõpuni ka muude kui TsMS §-s 378 loetletud hagi tagamise abinõudega. See, et äriühingu juhtorganite liikmete määramist kohtu korras reguleerib eraldi menetlusena TsMS 59. peatükk, ei välista kohtu õigust määrata vaidlusaluse õigussuhte esialgseks reguleerimiseks äriühingu juhtorgani liikmeid (RKTKm nr 3-2-1-51-10, p 6 ja 11, nr 3-2-1-97-11, p 34). ). Hagi tagamise abinõude loetelu sisaldub TsMS § 378, mis ei ole ammendav. TsMS § 378 lg 4 kohaselt hagi tagava abinõu valikul tuleb arvestada, et kohaldatav abinõu koormaks kostjat üksnes niivõrd, kuivõrd seda võib pidada hageja õigustatud huvisid ja asjaolusid arvestades põhjendatuks.

23. Kohus leiab, et hageja on teistkordse hagi tagamise taotlusega veenvalt põhistanud vajadust Polybius Foundation SE haldusnõukogusse asendusliikmete määramise vajalikkust. *Euroopa Liidu Nõukogu määruse (EÜ) nr 2157/2001 Euroopa äriühingu (SE) põhikirja kohta rakendamise seaduse* (edaspidi: SEPS) § 22 lg-te 4 ja 6 kohaselt võivad aktsionärid, kelle aktsiatega on esindatud vähemalt 1/10 aktsiakapitalist, mõjuval põhjusel nõuda haldusnõukogu liikme tagasikutsumist kohtu poolt ja samuti võib mõjuval põhjusel väljalangenud haldusnõukogu liikme asemele uue liikme määrata haldusnõukogu, aktsionäri või muu huvitatud isiku nõudel kohus.

Ühtlasi reguleerib SE õiguslikku seisundit ka *Euroopa Liidu Nõukogu 8. oktoobri 2001 mää* *(EÜ) nr 2157/2001 Euroopa äriühingu (SE) põhikirja kohta* (edaspidi: *määrus*). SEPS § 1 lg kohaselt kohaldatakse SE suhtes SEPS-i ja muid riigisiseseid õigusakte, kui määruse järgi tule lähtuda riigisisesest õigusest või kui määrus annab võimaluse reguleerida teatavaid valdkondi riigisisese õiguse alusel. SEPS § 21 lg 1 sätestab, et haldusnõukogul on *kolm liiget*, kui põhikiri ei näe ette suuremat liikmete arvu. SEPS § 20 lg-te 1 ja 2 kohaselt võib SE-d kõigis õigustoimingutes esindada iga haldusnõukogu liige, kui põhikirjas ei ole ette nähtud, et haldusnõukogu liikmed või mõned neist võivad esindada SE-d ühiselt. Kolmandate isikute suhtes kehtib ühine esindus ainult siis, kui see on kantud äriregistrisse. Haldusnõukogu liikmed on SE nimel tehingute tegemisel kohustatud SE suhtes järgima põhikirjas ettenähtud või üldkoosoleku või haldusnõukogu kehtestatud piiranguid. Esindusõiguse piiramine ei kehti kolmandate isikute suhtes. Polybius Foundation SE põhikirja p-de 4.1 ja 4.6 kohaselt *(dtl 25)* juhib seltsi haldusnõukogu, mis koosneb kolmest kuni viiest liikmest. Kaks haldusnõukogu liiget võivad esindada seltsi *ühiselt*. Äriregistri väljavõtte kohaselt on Polybius Foundation SE-l hetkel 2 haldusnõukogu liiget – kostjad II ja III. Seega ei vasta kehtiv olukord viidatud Polybius Foundation SE-s seaduse ega ka põhikirja nõuetele.

24. Riigikohus on avaldanud, et vaidlusaluse õigussuhte reguleerimisel TsMS § 377 lg 2 järgi on kohtul ulatuslik diskretsiooniõigus (RKTKm nr 3-2-1-51-10, p 11). Riigikohus on märkinud, et hagi tagamise korras TsMS 40. peatüki sätete alusel kohtu poolt tsiviilasja menetluses lõpplahendi jõustumiseni ametisse määratud juhatuse liiget ei ole alust käsitada juhatuse liikmena, kelle kohus on määranud ÄS § 184 lg-s 6 sätestatud eelduste esinemisel hagita menetluse tulemusena tehtud lõpplahendis (TsMS 59. peatükk). Hagi tagamise korras juhatuse liikme määramise eesmärk erineb ÄS § 184 lg 6 ja TsMS §-de 602-606 alusel juhatuse asendusliikme määramise eesmärgist. Kohus võib sellise hagi tagamiseks, mille esemeks ei ole rahaline nõue kostja vastu, hageja taotlusel esialgselt reguleerida vaidlusalust õigussuhet. Sellise hagi tagamise (vaidlusaluse õigussuhte esialgse reguleerimise) eesmärk on eelkõige olulise kahju või omavoli vältimine (TsMS § 377 lg 2), tagamaks menetluse ajaks õigusrahu. Hagi tagamise korras osaühingule juhatuse liikme määramisel ei tule juhinduda ÄS § 184 lg-st 6 (RKTKm nr 2-18-2243, p 29jj). Kohtu hinnangul laieneb viidatu analoogia korras ka aktsiaseltsi juhatuse liikmetele ja seeläbi ka SE juhtorgani liikmetele (määruse artikkel 3 lg 1, ÄS §§ 309-310). Eelviidatud tsiviilasjas määrati hagi tagamise korras täiendav juhatuse liige senise juhatuse liikme kõrvale.

25. Kohtu hinnangul on ennatlik enne käesoleva tsiviilasja sisulist arutamist otsustada, kas kostjate II ja III tegevus annab alust nende tagasikutsumiseks Polybius Foundation SE juhtorganist. Samas nõustub kohus hagejaga, et käesolevalt on Polybius Foundation SE tegutsemine oma vara võimalikul tagasinõudmisel ja konfiskeerimise vältimisel sisuliselt halvatud ning eelduslikult ei ole äriühingul võimalik võtta vastu otsuseid ega teha toiminguid, mis võimaldaksid Ameerika Ühendriikides toimuva kriminaalmenetluse raames aegkriitilistes tingimustes Polybius Foundation SE vara kaitseks vajalikke samme astuda. Hageja on usutavalt põhistanud ka ühingusisestest mehhanismidest lähtuvate meetmete mittepiisavuse, kuna see ei oleks kostjate II ja III võimalike isiklike huvidega kriminaalkaristuse vähendamise kontekstis kooskõlas.

26. Seega määrab kohus Polybius Foundation SE (registrikood: 14202836) haldusnõukogu *piiratud volitustega* ajutisteks liikmeteks kuni tsiviilasjas nr 2-25-3440 kohtulahendi jõustumiseni vandeadvokaat Martin Pärna, vandeadvokaat Daniil Savitski ja Urmas Võimre, kelle volitused haldusnõukogu liikmetena piirduvad Ameerika Ühendriikide kohtule kriminaalasja nr 2:22-CR-00185-RSL (Ameerika Ühendriigid vs Ivan Turõgin ja Sergei Potapenko) raames Polybius Foundation SE arestitud varade tagasisaamiseks nn „süütu omaniku" nõude esitamisega ja selleks vajalike toimingute teostamisega ja dokumentide esitamisega (sealhulgas Polybius Foundation SE-le kuuluvate varade arestist vabastamise ja Polybius Foundation SE-le tagastamise taotlemisega) ning Eesti Vabariigi äriregistrile Polybius Foundation SE majandusaasta aruannete esitamisega. Samuti kohustada kostjaid II ja III või Polybius Foundation SE raamatupidamisdokumente valdavaid isikuid andma 10 päeva jooksul alates käesoleva hagi

8

tagamise määruse kättetoimetamisest kohtu poolt määratud Polybius Foundation SE haldusnõukogu asendusliikmetele üle Polybius Foundation SE raamatupidamisdokumendid. Kohtu hinnangul on eelnimetatud toimingute lubamine piisav ja proportsionaalne, et vaidlusalust õigussuhet esialgselt reguleerida. Hagi tagamise meede ei tohi olla ulatuslikum ega intensiivsem, kui on hageja õiguste kaitseks vajalik. Ei ole võimalik asuda seisukohale, et kostjate II ja III jätkamine hagi tagamise korras kohtu määratud Polybius Foundation SE haldusnõukogu asendusliikmete kõrval põhjustaks PFSE-le või aktsionäridele edaspidi vältimatut kahju. Küll nõustub kohus hagejaga selles, et vara konfiskeerimise vaidlustamiseks on vaja äriühingu juhtorganil ilmselt juba lähiajal vajalikke toiminguid teha. Samuti on Polybius Foundation SE sundlõpetamise vältimiseks vaja haldusnõukogul tegeleda sellega, et Eesti Vabariigi äriregistrile saaksid esitatud saaksid äriühingu majandusaasta aruanded, milleks üldteadaolevalt on vaja ka Polybius Foundation SE raamatupidamisdokumente. Viimased võivad osutuda oluliseks ka kriminaalasja raames toimuva konfiskeerimise vaidlustamise menetluse raames.

27. Kohus leiab, et hageja on piisavalt põhistanud, miks vandeadvokaat M. Pärn, vandeadvokaat D. Savitski ja U. Võimre sobivad oma seniste kogemuste tõttu haldusnõukogu ajutisteks liikmeteks. Kohtu päringust rahvastikuregistrisse nähtub, et kõik nimetatud isikud elavad Eesti Vabariigis, mistõttu on täidetud ka SEPS § 21 lg 5 nõue, et vähemalt poolte haldusnõukogu liikmete elukoht peab olema Eestis, mõnes teises Euroopa Majanduspiirkonna liikmesriigis või Šveitsis.

28. Muus osas jääb kohus 7.03.2025 määruses avaldatud põhjenduste juurde – juhtorgani liikme kohtu kaudu tagasikutsumist õigustav mõjuv põhjus on eelkõige tema kohustuste rikkumine, mis peab olema sedavõrd oluline, et äriühingult ei saa mõistlikult eeldada selle isiku edasist juhatuse või haldusnõukogu liikmeks olemist. Seega tuleb esmalt tuvastada, kas kohustuste rikkumine on aset leidnud, ning seejärel hinnata selle olulisust, arvestades rikkumise asjaolusid, korduvust, kestvust, mõju äriühingule, asjaomaste isikute kavatsusi ning muid olulisi tegureid. Hagi tagamise kaudu hagi eesmärgi saavutamine sisulist menetlust läbimata ei saa olla põhjendatud ning kohus seda lubada ei saa. Lisaks ei ole hagi tagamise korras põhjendatud kostjate I ja II kohustamine anda vara üle kostjale I, kuna selline nõue eeldab põhjalikku sisulist menetlust ja tõendite kaalumist. *Samas ei ole põhimenetluses vastavat nõuet kostjate vastu ka esitatud.* Hagi tagamise eesmärk on ajutiste meetmete rakendamine kohtuotsuse täitmise tagamiseks, mitte osapoolte õigussuhete sisuline ümberkujundamine enne lõplikku lahendit.

*(allkirjastatud digitaalselt)*

Kadi Karting
kohtunik

9

# VALIDITY CONFIRMATION SHEET

## SIGNED FILES

FILE NAME

| | FILE SIZE |
|---|---|
| 250312_Karting_M_Pilatus OÜ vs Polybius Foundation SE, Turõgin, Potapenko_hagi tagamine_orah.docx | 77 KB |

## SIGNERS

| NO. | NAME | PERSONAL CODE | TIME |
|---|---|---|---|
| 1 | KADI KARTING | 48412164713 | 12.03.2025 15:02:36 +02:00 |

VALIDITY OF SIGNATURE

SIGNATURE IS VALID

ROLE / RESOLUTION

Kohtunik

PLACE OF CONFIRMATION (CITY, STATE, ZIP, COUNTRY)

Viljandi

SERIAL NUMBER OF SIGNER CERTIFICATE

21:92:b3:f7:1b:e9:b2:84:dc:14:db:0f:a2:57:17:1d

| ISSUER OF CERTIFICATE | AUTHORITY KEY IDENTIFIER |
|---|---|
| ESTEID2018 | D9 AC 70 DB 5F 7E BE 94 F8 A0 E4 BE 47 A2 D0 34 AD 9A 2A 12 |

HASH VALUE OF SIGNATURE

30 31 30 0D 06 09 60 86 48 01 65 03 04 02 01 05 00 04 20 7D 2B 8E 76 DD 5C 29 86 28 29 87 59 F1 9B 50 FF 20 A5 72 33 5E E1 D4 48 F7 DD 51 75 12 36 AE AE

The print out of files listed in the section **"Signed Files"** are inseparable part of this Validity Confirmation Sheet.

NOTES

Presented print summary is informative to confirm existence of signed file with given hash value. The print summary itself does not have independent verification value. Declaration of signers' signature can be verified only through digitally signed file.

7

**TRANSLATED FROM ESTONIAN**



# COURT ORDER

*Interim relief*

| | |
|---|---|
| Place and time of making the order | Tartu District Court Viljandi Courthouse        12 March 2025 |
| Civil matter number and object of the action | 2-25-3440<br>**Pilatus OÜ's action against Polybius Foundation SE for the removal of Ivan Turõgin and Sergei Potapenko from the administrative board and application for the appointment of new alternate members to the administrative board of Polybius Foundation SE**<br>action |
| Procedural act | Adjudication of the application for interim relief. |
| Judge | Kadi Karting |
| Plaintiff | Pilatus OÜ (registry code: 14314535, address: Uus tn 2, Jõhvi; e-mail: pilatus_ou@protonmail.com) |
| Contractual representative of the plaintiff | Attorney at Law Magnus Braun (Advokaadibüroo WIDEN; e-mail: magnus.braun@widen.legal) |
| Defendant I | Polybius Foundation SE (registry code: 14202836; seat: Tartu mnt 43, Tallinn; e-mail: info@burfa.com) |
| Defendant II | Ivan Turõgin (personal identification code: 38501262250; e-mail: info@burfa.ee; ivan@burfa.com) |
| Defendant III | Sergei Potapenko (personal identification code: 38502012230; e-mail: info@burfa.ee; sergei@burfa.com) |

**DECISION**

1. **To grant the application for interim relief in part**
2. **To appoint attorney-at-law Martin Pärn (personal identification code: 37710020012), attorney-at-law Daniil Savitski (personal identification code: 38905040251) and Urmas Võimre (personal identification code: 37902130277) as temporary members with limited powers of the administrative board of Polybius Foundation SE (registry code: 14202836) with the term of office until the entry into force of judicial decision in civil matter No. 2-25-3440, whose powers as members of the administrative board are limited to filing a so-called "innocent owner" claim with the United States court for the return of assets of Polybius Foundation SE seized within the framework of criminal case No. 2:22-CR-00185-RSL (United States of America vs. Ivan Turõgin and Sergei Potapenko) and performing the necessary actions and submitting documents (including requesting the release of assets belonging to Polybius Foundation SE from seizure and their return to Polybius Foundation SE) and submitting the annual reports of Polybius Foundation SE to the commercial register of the Republic of Estonia.**
3. **To oblige Ivan Turõgin and Sergei Potapenko or persons in possession of the accounting documents of Polybius Foundation SE to hand over the accounting documents of Polybius Foundation SE (registry code: 14202836) to Martin Pärn (personal identification code: 37710020012), Daniil Savitski (personal identification code: 38905040251) or Urmas Võimre within 10 days from the service of this interim relief order.**
4. **To deem the interim relief order immediately enforceable (subsection 5 of § 367 of the Code of Civil Procedure).**
5. **To serve the order on the plaintiff's contractual representative and on defendants I, II and III.**

**Appeal procedure**

The parties to the proceeding may file an appeal against this order (subsection 1 of § 390 of the Code of Civil Procedure). The filing of appeal does not suspend enforcement of this interim relief order (subsection 2 of § 390 of the Code of Civil Procedure). A written appeal against the order must be submitted to the Tartu Circuit Court through the Viljandi courthouse of the Tartu District Court within 15 days from the date of service of the ruling to the appellant (§§ 660-661 of the Code of Civil Procedure).

**CIRCUMSTANCES**

1. Pilatus OÜ has filed an action against Polybius Foundation SE (hereinafter also referred to as *PFSE*) on 05.03.2025 for the removal of Ivan Turõgin and Sergei Potapenko from the administrative board and application for the appointment of alternate members to the administrative board of Polybius Foundation SE. The plaintiff has explained that it is a minority shareholder in PFSE with a 25% stake. The remaining 75% of the stake belongs to Burfa Capital OÜ. The members of the management board of Burfa Capital OÜ are Pavel Ivanov, defendant II and defendant III, and the beneficial owners are defendant II and defendant III. Therefore, the majority shareholder of PFSE, Burfa Capital OÜ, is under the control of defendants II and III. PFSE is a European company registered in Estonia (*Societas Europaea*). According to Article 4.1 of the statutes of PFSE, PFSE is governed by an administrative board consisting of 3 to 5 members. *(digital file pages 272-276)*. Subsection 1 of § 21 of the Council Regulation (EC) No 2157/2001 of 8 October 2001 on the Statute for a European company (SE) Implementation Act provides that the administrative board shall consist of three members unless the statutes prescribe a greater number of members. Therefore, according to the law, the administrative board must have at least three members. According to Article 4.6 of the statutes, two members of the administrative board may jointly represent the company. At the time of filing the application, PFSE is represented by Defendant II and Defendant III as members of the administrative board. Anton Altement, the third member of the PFSE administrative board, resigned from the administrative board on 29 November 2022.

2. Together with the statement of claim, a request for interim relief was submitted, the purpose of which was stated to ensure the protection of the interests of the company Polybius Foundation SE and to prevent significant damage. The plaintiff requested, as a means of interim relief, the removal of the members of the administrative board of Polybius Foundation SE, Ivan Turõgin and Sergei Potapenko, and the appointment of new alternate members Michael Abdurrazag Bottjer, Tatiana Durinina and Urmas Võimre in their place, as defendants II and III have allegedly acted in a conflict of interest and caused damage to the company. Defendants II and III are also required to hand over the assets of Polybius Foundation SE, including 10,624.81 ETH, and other assets and accounting documents in the course of interim relief. The plaintiff has argued that defendants II and III have made significant management errors and lack the motivation to act in the best interests of the company due to a conflict of interest. Court intervention is also necessary to enable legal claims to be filed on behalf of PFSE, including a so-called "innocent owner" claim in a United States court to recover seized assets and the recovery of claims against Burfa Media OÜ. The requested remedies do not unreasonably burden the defendants, as they are necessary to ensure the sustainability of PFSE and to prevent potential harm.

3. The action and the request for interim relief state that on 21 November 2022, the United States Attorney's Office filed charges against defendant II and defendant III for conspiracy, wire fraud, and conspiracy to commit money laundering. The indictment also included a forfeiture requirement, which required defendants II and III to surrender to the United States, among other things, money, real estate, vehicles, cryptocurrency and cryptocurrency mining equipment, if convicted. Defendants II and III entered into plea agreements in the United States District Court for the Western District of Washington on 12.02.2025 (*plea agreements*), in which they pleaded guilty to conspiracy to commit wire fraud (*conspiracy to commit wire fraud*). The offences to which defendant II and defendant III pleaded guilty could carry a sentence of up to 20 years in prison. Defendants II and III also agreed to surrender the assets of PFSE and its subsidiaries to the United States, although PFSE, according to the plaintiff, has no direct connection to these charges. Due to the terms of the settlement agreement, defendants II and III are prohibited from challenging the forfeiture of the property or from bringing an innocent owner claim on behalf of PFSE. By doing so, defendants II and III have harmed the interests of the company and misused the property for their own personal interests and to obtain a lighter sentence. In addition, they have failed to submit annual reports since 2021 and have not

2

convened an annual general meeting, which puts PFSE at risk of compulsory dissolution. Their possible imprisonment of up to 20 years will also make it impossible for them to fulfil their future management duties. Defendants II and III have undertaken not to make any claims, directly or indirectly, in relation to the confiscated property *(see Annex 6 to the statement of claim, page 23, line 1 et seq. and Annex 8 ibid; for Estonian translation, see Annex 7, page 23, line 1 et seq. and Annex 9 ibid)*. As a result of the aforementioned court settlements, the United States government has agreed to submit a request that defendants II and III not be sentenced to more than ten years in prison.

4.  The plaintiff stated in the initial request for interim relief that the court can appoint a new member to the company's management body only to replace a member who has been removed if there is a valid reason, such as a permanent conflict of interest or a risk of damage to the company. It would be in PFSE's best interest to demand the return of the seized assets, but the existing members of the administrative board cannot do so due to a persistent conflict of interest. The appointment of alternate members is therefore necessary to enable PFSE to represent its interests in the proceedings in the United States. Without alternate members, damage to PFSE is inevitable, as there is no governing body that can ensure the protection and preservation of the company's assets.

5.  The court dismissed the request for interim relief by a ruling dated 7.03.2025. *(digital file pages 893-896).* The court noted that the plaintiff had not substantiated the request to remove the members of the administrative board and appoint alternate members as a means of interim relief, since the plaintiff had not proven the risk of damage (i); the plaintiff had not presented credible candidates as alternate members (ii); the plaintiff had not proven that there was no possibility of resolving the situation through other internal company (i.e. corporate law) measures (iii).

6.  The plaintiff filed a new application for interim relief on 11.03.2025., which outlines additional justifications for the need for interim relief *(digital file pages 748-758).* The plaintiff requests, as an interim relief, to remove Ivan Turõgin and Sergei Potapenko from the administrative board of Polybius Foundation SE (registry code: 14202836) and to appoint attorney-at-law Martin Pärn, attorney-at-law Daniil Savitski and Urmas Võimre as alternate members of the administrative board of Polybius Foundation SE (registry code: 14202836) until the judicial decision in this case enters into force. In addition, it is requested that defendants II and III be ordered to transfer the company's assets to Polybius Foundation SE, including the funds in the virtual currency wallet belonging to Polybius Foundation SE (address: 0xfF575a22975CC413771825EB84c163189A4d5D22) (10,624.81 ETH as of the date of filing the application for interim relief) and to hand over the accounting documents of Polybius Foundation SE to the alternate members of the administrative board of Polybius Foundation SE within 10 days of the service of the order for interim relief.

7.  The plaintiff further explains in the application of 11.03.2025 that on 07.03.2025 it became clear that PFSE's assets would be seized in an expedited manner in the context of criminal proceedings against defendants II and III in the USA. Thus, PFSE does not have until September 2025 to file a claim in the United States to protect its assets, but the need to file a claim must be considered essentially within the next 30 days. The plaintiff requested information about the defendants' II and III criminal proceedings from Jennifer Arbitter Williams, an attorney-at-law at law firm Freeh, Sporkin & Sullivan in the United States of America. Attorney-at-law J. A. Williams confirmed on 09.03.2025 in e-mail *(digital file pages 759-844, i.e. Jennifer A. Williams' confirmation letter with additional materials and its translation)*, among other things, that on 07.03.2025, the United States Department of Justice filed a motion for preliminary seizure of all assets in the criminal proceedings against defendants II and III, requesting an order declaring that all of the plaintiffs' interests in the seized assets have been assigned to the United States in accordance with the court agreements entered into *(digital file pages 845-886, i.e. application for preliminary confiscation of assets and its translation).* If the court makes such an order, the United States Department of Justice will commence civil proceedings as soon as possible to allow third parties to bring claims on behalf of the innocent owner within a limited time. *(J. A. Williams' letter page 3; clause B).* As the owner of the seized property, Polybius (PFSE) has the right to file an "innocent owner" claim within 30 days of the United States Department of Justice's notice of forfeiture by: (a) providing documentary evidence of PFSE's ownership of the seized property; (b) asserting that

PFSE is the innocent owner because PFSE was not involved in the commission of the crime and had no knowledge of the criminal activity. An "innocent owner" claim cannot be filed after 30 days have passed. If the deadline is missed, PFSE is deemed to have waived the right to file an "innocent owner" claim. The defendants, i.e., defendants II and III, are prohibited from opposing the seizure of assets belonging to PFSE, from participating in an "innocent owner" claim, from participating in any restitution or compensation claim, and in any other way from obstructing the United States from confiscating the seized assets listed in the court agreements. *"In other words, defendants may not take any position in any proceeding – in the United States or abroad – either personally or as a shareholder, board member, or corporate officer that would conflict with their consent to the forfeiture and confiscation of seized assets." If they violate this condition, the government has the right to withdraw from the agreement, reinstate the charges for all 18 episodes, and seek financial penalties in the tens of millions and decades of imprisonment. This means that Potapenko and Turõgin are prohibited from filing and also supporting the claim or restitution claim of the innocent owner of PFSE." (see J. A. Williams' email, page 4, clause 2). PFSE has the right under US law to file an innocent owner claim and/or seek the return of seized assets to prevent their confiscation by the US government. To the extent that the defendants Turõgin and Potapenko are prohibited from asserting this right, there is a permanent conflict of interest between their interests and those of Polybius. /….] This conflict needs to be resolved quickly, as a request for preliminary confiscation of assets has been filed. An innocent owner claim must be filed within 30 days of the seizure notice, and this claim requires significant preparation. Polybius must provide a detailed account of the facts proving ownership of the disputed assets, prove that it has not engaged in criminal conduct, demonstrate its significant efforts to launch a legitimate business and to operate it separately and independently of the actions of the two defendants* (see page 4 of the letter, clause C).

8.  To the knowledge of the plaintiff, defendants II and III are permanently resident in the State of Washington, United States, as evidenced by the orders of the United States District Court for the Western District of Washington regarding the conditions of release from pretrial detention of defendants II and III *(see Annexes 14-19 to the statement of claim)*. It is apparent from the orders in Annexes 14 and 15 to the statement of claim that (i) defendants II and III have surrendered their passports *(see clauses 2 of the court orders)* and any travel is limited to the western region of Washington State *(see clauses 7 of the regulations)*. Defendants II and III are therefore unable to leave the State of Washington. The condition set out in subsection 5 of § 21 of SEPS Section 21(5) of the SEPS, according to which the residence of at least one-half of the members of the administrative board must be in Estonia, other Member State of the European Economic Area or Switzerland, has not been met. Defendants II and III have not properly organised the submission of PFSE's annual reports. The latest annual report submitted is for 2020 *(see Annex 4 to the statement of claim, page 3)*. The registrar may dissolve PFSE compulsorily. Defendants II and III, as members of the administrative board of PFSE, are buying themselves a lighter sentence from the United States at the expense of the assets of PFSE and the plaintiff, a minor shareholder of PFSE. By transferring the assets belonging to PFSE to the United States, defendants II and III commit a criminal offence under § 217² of the Penal Code, i.e., abuse of trust, because they, in violation of their duty of loyalty, dispose of PFSE assets to serve their own interests and in such a way that PFSE receives no benefit or consideration.

9.  The plaintiff has substantiated and proven the conflict of interest of the members of the administrative board and the risk of significant damage to PFSE as a result of the confiscation of assets by the United States with court agreements signed by defendants II and III.

10. The plaintiff points out that case law has considered it possible to appoint members of a company's management body for the preliminary regulation of the disputed legal relationship. The Supreme Court has taken the position that the court may, at the request of the plaintiff, provide interim relief in order to ensure the company's ability to operate effectively until the end of the dispute, also with measures other than those listed in § 378 of the Code of Civil Procedure for measures of interim relief. The fact that the appointment of members of a company's management bodies by court is regulated as a separate procedure by Chapter 59 of the Code of Civil Procedure does not exclude the right of the court to appoint members of the company's management body for the preliminary regulation of the disputed legal relationship. Based on the above, the court has the right to appoint alternate members of the administrative board of the company as interim protection. Furthermore, this position has been further confirmed in subsequent Supreme Court practice in action-by-petition cases.

11. The plaintiff explains that the appointment of alternate members as a means of interim relief would not achieve the purpose of the main action. One of the claims in the action is the appointment of alternate members at the court's discretion. Interim relief would not resolve the dispute definitively but would arrange for the appointment of alternate members who are able, capable and motivated to protect the property interests of PFSE and organise accounting. The plaintiff has proven that defendants II and III are convicted criminals who are using PFSE assets to buy a lenient criminal sentence from the United States and have undertaken, through court agreements with the United States, not to protect PFSE's property interests. In a situation where defendants II and III prioritise their own interests over those of PFSE, the appointment of alternate members as a means of interim relief is justified.

12. As the owner of the confiscated property, PFSE has the right to file a so-called innocent owner claim in a US court. The deadline for filing such a claim is within 30 days of receipt of the forfeiture notice from the U.S. Department of Justice, which, according to attorney-at-law J. A. Williams, could occur at essentially any time from the filing of this petition. Therefore, the need for legal protection in the matter of appointing alternate members is extremely time-critical. Filing a claim requires the identification of several additional circumstances, the collection of evidence, and a thorough assessment. Missing annual reports must also be prepared and audited. To file a successful claim, it is essential to begin the aforementioned activities as soon as possible. This is only possible if alternate members are appointed to PFSE as a means of interim relief. The time-critical nature and the commitment made by defendants II and III to fully assist in the confiscation of PFSE assets by the US are the reasons why it is not possible to resolve the conflict of interest situation that has arisen through internal company mechanisms. According to clause 5.2 of the statutes of PFSE, the general meeting is convened by the administrative board, unless otherwise provided by law. In a hypothetical situation where the plaintiff, as a shareholder of PFSE, were to submit a request to convene a special general meeting with the agenda of 1) removing the members of the administrative board and 2) electing the members of the administrative board, it would not be realistic to assume that defendants II and III would 1) convene a general meeting, because given the agenda, they would thereby create an opportunity to remove themselves and elect new members of the administrative board, and thereby the opportunity for PFSE to oppose the confiscation of assets and file claims in the USA. In doing so, defendants II and III would violate the terms of their settlement agreements with the United States and risk tens of millions of dollars in fines and decades of imprisonment; 2) Vote at the meeting to remove themselves and elect new members. The reasons why defendants II and III would not do so are the same – they would face financial penalties in the tens of millions of dollars and decades of imprisonment. The opposite behaviour would not be realistic or consistent with human nature.

13. If defendants II and III do not convene a special general meeting at the plaintiff's request, the plaintiff has the right to convene the meeting himself pursuant to subsection 2 of § 292 of the Commercial Code, but only after one month has passed since the plaintiff's request was received, and then with one week's notice pursuant to clause 5.6 of the statutes. Defendants II and III would not vote in favour of their own removal and the election of new members of the administrative board, and both the plaintiff and PFSE would be in the same situation after one month and one week. By that time, however, the 30-day deadline for PFSE to file an innocent owner claim has already passed, and PFSE has incurred losses worth 290 million euros. The plaintiff has substantiated with the statement of its legal representative (Annex 22 to the statement of claim) and the documents attached thereto that PFSE has a claim against Burfa Media OÜ arising from the 2022 loan agreements in the amount of 160 million euros. To avoid a possible limitation objection by Burfa Media OÜ and the occurrence of major and irreversible damage to PFSE, it is necessary to start collecting claims within the limitation period. The plaintiff has also, in his opinion, convincingly substantiated the ownership of the property (10,624.81 ETH, worth over 20 million euros) by the confirmation letter from Anton Altement (former member of the PFSE board) contained in Annex 22 to the statement of claim and the documents attached thereto. Defendants II and III are in possession of property belonging to PFSE, the preservation of which cannot be entrusted to members of the administrative board who have a conflict of interest with PFSE and who disregard their duty of loyalty. There is also a risk that the registrar will initiate the compulsory dissolution of PFSE due to failure to submit annual reports.

14. The appointment of alternate members to the administrative board of PFSE ensures the preservation of assets and helps prevent significant damage to the company during the proceedings. As legal representatives of PFSE, alternate members can ensure that an innocent owner claim is filed in the US on behalf of PFSE and that assets belonging to PFSE are released from seizure and returned. Alternate members can also ensure that PFSE submits claims against Burfa Media OÜ based on loan agreements in a manner and within a period that would exclude the possibility of Burfa Media OÜ relying on the statute of limitations. The alternate members would also be responsible for organising PFSE's accounting and ensuring the submission of annual reports so that PFSE is not subject to compulsory dissolution.

15. The plaintiff requests that attorney-at-law Martin Pärn, attorney-at-law Daniil Savitski and Urmas Võimre be appointed as members of the PFSE administrative board until the final decision in this case enters into force. The individuals have provided the necessary consents for their appointment as members of the PFSE administrative board, confirming that they meet the requirements established by law *(digital file page 888 – consent of M. Pärn; digital file page 890 – consent of D. Savitski; digital file page 482 – consent of U. Võimre).* The candidates do not request an advance payment to cover their expenses and fees. M. Pärn and D. Savitski are attorneys-at-law whose independence is firmly guaranteed. U. Võimre acts as both a restructuring advisor and a trustee in bankruptcy. In previous court practice, trustees in bankruptcy have also been appointed as alternate members, because trustees in bankruptcy are court trustees who – like lawyers – are subject to high moral and ethical requirements and whose independence and impartiality cannot reasonably be doubted. M. Pärn is an attorney-at-law and a member of the Estonian Bar Association since 18 April 2006. He is a member of the management board and partner of the law firm Naur & Pärn OÜ and has been acting as a trustee in bankruptcy since 1 January 2010. Thanks to his long-term experience and extensive professional knowledge (including acting as the trustee in bankruptcy of CoinLoan OÜ and managing CoinLoan's bankruptcy assets consisting of cryptocurrencies worth more than 100 million euros), he has the necessary competence to perform the duties of an alternate member of the administrative board of PFSE. D. Savitski is an attorney-at-law and a member of the Estonian Bar Association since 11 February 2014. He is a managing partner at the law firm K&S Legal and responsible for crypto assets and corporate law. His professional knowledge and extensive experience make him a suitable candidate to serve as an alternate member of the administrative board of PFSE. U. Võimre is a suitable candidate for a member of the administrative board because he has long-term experience as a restructuring advisor and trustee in bankruptcy and is therefore able to organise the submission of claims against Burfa Media OÜ. U. Võimre also works as a financial expert (including as a registered private expert), has a very good command of accounting requirements and is able to organise the preparation of PFSE's annual reports.

16. The plaintiff requests that defendants II and III be ordered to hand over the assets of the company, i.e., 10,624.81 ETH, a cryptocurrency known as *etherum*, which is in the possession of the defendants but belongs to PFSE, to the alternate members of PFSE appointed as a measure of interim relief. This is property that has not been seized in the course of proceedings in the United States and is not listed as PFSE property to be transferred in the criminal proceedings there. Since defendants II and III may also be in possession of other property belonging to PFSE, the plaintiff requests that defendants II and III be ordered to hand over all other property as part of interim relief. To the extent that defendants II and III have misused PFSE assets for their own personal interests and to serve the punishment imposed on them, there is a risk that defendants II and III will continue to use the company's assets for their own interests. Therefore, the plaintiff requests that defendants II and III be ordered to hand over 10,624.81 ETH, as well as other assets, to PFSE. The transfer and acceptance of the assets would be carried out by court-appointed alternate members, ensuring the technical security of the process (10,624.81 ETH can be transferred by defendants II and III to a cold wallet set up by the alternate members).

17. In addition, the plaintiff requests that defendants II and III be ordered to hand over PFSE's accounting documents within 10 days of service of the interim relief order. The documents are necessary to ensure the continuity of the company's operations and the fulfilment of accounting and reporting obligations. The delivery and receipt of accounting documents would be organised by alternate members appointed to PFSE as a measure of interim relief

18. In the plaintiff's opinion, the requested measures of interim relief do not burden the defendants more than is necessary to protect the plaintiff's legitimate interests. There are also no possible remedies that would be less burdensome for the defendants. The plaintiff has convincingly substantiated and demonstrated that by appointing alternate members to the administrative board of PFSE for the duration of the dispute, it is possible to prevent irreversible and significant damage to PFSE. The alternate members have the opportunity to organise the filing of an innocent owner claim in the US, as well as to organise PFSE's accounting and ensure the submission of audited annual reports to prevent PFSE from being compulsorily dissolved. In addition, the alternate members can begin organising the filing of a claim against Burfa Media OÜ as a creditor of PFSE in the approximate amount of 160 million euros. PFSE and the plaintiff, a minority shareholder of PFSE, have no alternative means of protecting PFSE's assets. The plaintiff has justified that the appointment of substitute members as a means of interim relief is absolutely necessary and there is no possibility of resolving the situation through other measures based on internal mechanisms within the company. The obligation to transfer the property does not unreasonably burden defendants II and III, because it is PFSE's property, which there is no justification for keeping in the possession of the administrative board, which has de facto failed and does not comply with the requirements of the law. The need for the alternate members to organise the accounting of PFSE and submit reports is obvious, as is the need to obtain documents from defendants II and III for this purpose. The asset dispositions serve only the interests of defendants II and III. The plaintiff needs legal protection to prevent illegal asset dispositions.

**REASONING OF THE COURT**

19. The court finds that the application for interim relief must be <u>granted in part</u>.

20. Upon granting interim relief, the court must verify whether the application for interim relief meets the requirements set out in subsection 1 of § 381 of the Code of Civil Procedure (including presence of the circumstances specified in § 377 of the Code of Civil Procedure), whether the statement of claim meets the requirements set out in clauses 1-3 of subsection 1 of § 363 of the Code of Civil Procedure, whether the claim is admissible (in particular, subsection 1 of § 371, subsection 1 of § 423, § 428 of the Code of Civil Procedure), legally prospective (subsection 2 of § 371, subsection 2 of § 423 of the Code of Civil Procedure), and whether the circumstances underlying the claim and its securing are justified (§ 235 and subsection 2 of § 381 of the Code of Civil Procedure) (see Civil Chamber of the Supreme Court order No. 3-2-1-83-16, clauses 13–18). The plaintiff's claim is legally without prospects if, if the facts presented in the claim were proven, the claim could not be satisfied on any substantive legal basis (Civil Chamber of the Supreme Court order No. 3-2-1-193-13, clause 12). The court is of the opinion that the action may be legally prospective for the purposes of the aforementioned norms.

21. § 377 (2) of the Code of Civil Procedure provides that in order to secure an action the object of which is not a monetary claim against the defendant, the court may provisionally regulate a disputed legal relationship and, above all, the manner of use of a thing, if this is necessary for the prevention of significant damage or arbitrary action or for another reason. This may be done regardless of whether there is reason to believe that failure to secure the action may render enforcement of the court judgment difficult or impossible.

22. The court agrees with the plaintiff's reasoning that the Supreme Court has taken the position that the court may, at the request of the plaintiff, provide interim relief in order to ensure the company's ability to operate effectively until the end of the dispute, also with measures other than those listed in § 378 of the Code of Civil Procedure for measures of interim relief. The fact that the appointment of members of a company's management bodies by court is regulated as a separate procedure by Chapter 59 of the Code of Civil Procedure does not exclude the right of the court to appoint members of the company's management body for the preliminary regulation of the disputed legal relationship (Civil Chamber of the Supreme Court order No. 3-2-1-51-10, clauses 6 and 11, No. 3-2-1-97-11, clause 34). ). The list of measures of interim relief is contained in § 378 of the Code of Civil Procedure, which is not exhaustive. According to subsection 4 of § 378 of the Code of Civil Procedure, a measure of interim relief must be selected such that the measure would burden the defendant only insofar as this can be considered reasonable in view of the legitimate interests of the claimant and of the circumstances.

23. The court finds that the plaintiff, with the second application for interim relief, has convincingly substantiated the need to appoint alternate members to the administrative board of Polybius Foundation SE. *Pursuant to subsections 4 and 6 of § 22 of the Council Regulation (EC) No 2157/2001 of 8 October 2001 on the Statute for a European company (SE) Implementation Act* (hereinafter: SEPS), shareholders whose shares represent at least one-tenth of the share capital may, with good reason, request the removal of a member of the administrative board by a court, and also, with good reason, a court may appoint a new member of the administrative board to replace a withdrawn member of the management board on the petition of the administrative board, a shareholder or other interested person. The legal status of an SE is also regulated by: *Council Regulation (EC) No 2157/2001 of 8 October 2001 on*

7

*the Statute for a European company (SE)* (hereinafter: *regulation*). According to subsection 2 of § 1 of SEPS, SEPS and other national legislation applies to an SE if pursuant to the Regulation provisions of national law apply or if the Regulation permits the governing of certain areas on the basis of national law. Subsection 1 of § 21 the SEPS provides that the administrative board shall consist of *three members* unless the statutes prescribe a greater number of members. According to subsections 1 and 2 of § 20 of SEPS, every member of the administrative board may represent the SE in all legal acts unless the statutes prescribe that all or some of the members of the administrative board may represent the SE jointly. Joint representation shall apply with regard to third persons only if it is entered in the commercial register. In concluding transactions in the name of the SE, the members of the administrative board of the SE are required to observe the restrictions provided for in the statutes of the SE, and restrictions established by the general meeting or the administrative board. A restriction on the right of representation does not apply with regard to third persons. According to clauses 4.1 and 4.6 of the statutes of Polybius Foundation SE *(digital file page 25),* the company is governed by an administrative board consisting of three to five members. Two members of the administrative board may jointly represent the company. According to the extract from the commercial register, Polybius Foundation SE currently has 2 members of administrative board – defendants II and III. Therefore, the current situation in the referenced Polybius Foundation SE does not meet the requirements of the law or the statutes.

24. The Supreme Court has stated that the court has extensive discretion in regulating the disputed legal relationship pursuant to subsection 2 of § 377 of the Code of Civil Procedure (Civil Chamber of the Supreme Court order No. 3-2-1-51-10, clause 11). The Supreme Court has noted that a member of the management board appointed by a court in civil proceedings under the provisions of Chapter 40 of the Code of Civil Procedure as a means of interim relief until the final decision enters into force is not considered a member of the management board appointed by the court in a final decision made as a result of action-by-petition proceedings if the prerequisites provided for in subsection 6 of § 184 of the Code of Civil Procedure are met (Chapter 59 of the Code of Civil Procedure). The purpose of appointing a member of the management board as a measure of interim relief differs from the purpose of appointing a substitute member of the management board based on subsection 6 of § 184 of the Commercial Code and §§ 602-606 of the Code of Civil Procedure. For interim relief in a case that does not have a financial claim against the defendant, the court may, at the request of the plaintiff, provisionally regulate the disputed legal relationship. The purpose of interim relief of such a case (preliminary regulation of the disputed legal relationship) is primarily the prevention of significant harm or arbitrary action (subsection 2 of § 377 of the Code of Civil Procedure) in order to ensure legal peace during the proceedings. When appointing a member of the management board of a private limited company as interim relief, subsection 6 of § 184 of the Commercial Code shall not be followed (Civil Chamber of the Supreme Court order No. 2-18-2243, clause 29 et seq.). According to the court, the above-mentioned provision also extends by analogy to the members of the management board of a public limited company and thereby also to the members of the management body of an SE (subsection 1 of article 3 of the Regulation, §§ 309-310 of the Commercial Code). In the aforementioned civil matter, an additional management board member was appointed as interim relief in addition to the current management board member.

25. The court finds that it is premature to decide, before considering the merits of this civil matter, whether the actions of defendants II and III provide grounds for their removal from the management body of Polybius Foundation SE. However, the court agrees with the plaintiff that Polybius Foundation SE's actions in the possible recovery of its assets and the prevention of confiscation are currently essentially paralysed and, presumably, the company is unable to make decisions or take actions that would allow it to take the necessary steps to protect Polybius Foundation SE's assets in the context of the criminal proceedings taking place in the United States under time-critical circumstances. The plaintiff has also credibly substantiated the inadequacy of measures based on internal company mechanisms, as this would not be consistent with the possible personal interests of defendants II and III in the context of reducing the criminal penalty.

26. Therefore the court appoints attorney-at-law Martin Pärn (personal identification code: 37710020012), attorney-at-law Daniil Savitski (personal identification code: 38905040251) and Urmas Võimre (personal identification code: 37902130277) as temporary members *with limited powers* of the administrative board of Polybius Foundation SE (registry code: 14202836) with the term of office until the entry into force of judicial decision in civil matter No. 2-25-3440, whose powers as members of the administrative board are limited to filing a so-called "innocent owner" claim with the United States court for the return of assets of Polybius Foundation SE seized within the framework of criminal case No. 2:22-CR-00185-RSL (United States of America vs. Ivan Turõgin and Sergei Potapenko) and performing the necessary actions and submitting documents (including requesting the release of assets belonging to Polybius Foundation SE from seizure and their return to Polybius Foundation SE) and submitting the annual reports of Polybius Foundation SE to the commercial register of the Republic of Estonia. Also, to order defendants II and III or persons in possession of the accounting documents of Polybius Foundation SE to hand over the accounting

documents of Polybius Foundation SE to the alternate members of the administrative board of Polybius Foundation SE appointed by the court within 10 days from the service of this interim relief order. In the opinion of the court, allowing the aforementioned actions is sufficient and proportionate to provisionally regulate the disputed legal relationship. The measure of interim relief may not be more extensive or intensive than is necessary to protect the rights of the plaintiff. It cannot be held that the continuation of defendants II and III as an interim relief alongside the court-appointed alternate members of the administrative board of Polybius Foundation SE would cause unavoidable future harm to PFSE or its shareholders. The court does agree with the plaintiff that the company's management body will probably need to take the necessary steps in the near future to challenge the confiscation of assets. Also, in order to prevent the compulsory dissolution of Polybius Foundation SE, the administrative board needs to ensure that the company's annual reports are submitted to the commercial register of the Republic of Estonia, for which, as is generally known, Polybius Foundation SE's accounting documents are also required. The latter may also prove important in the context of proceedings challenging confiscation in the criminal matter.

27. The court finds that the plaintiff has sufficiently substantiated why attorney-at-law M. Pärn, attorney-at-law D. Savitski and U. Võimre are suitable as temporary members of the administrative board due to their previous experience. The court's inquiry into the population register shows that all of the aforementioned persons reside in the Republic of Estonia, which is why the requirement of subsection 5 of § 21 the SEPS that the residence of at least one-half of the members of the administrative board must be in Estonia, other Member State of the European Economic Area or Switzerland has been met.

28. In other respects, the court adheres to the reasons published in the court order of 7.03.2025 – a valid reason justifying the removal of a member of the management body through the court is, first of all, a breach of his or her obligations, which must be so significant that the person cannot reasonably be expected to continue to be a member of the management board or administrative board of the company. Therefore, it is necessary to first establish whether a breach of obligations has occurred and then assess its significance, taking into account the circumstances of the breach, its repetition, duration, impact on the company, the intentions of the persons concerned and other relevant factors. Achieving the objective of the action by interim relief without going through the substantive procedure cannot be justified and the court cannot allow it. In addition, the obligation of defendants I and II to transfer the property to defendant I as a means of interim relief is not justified, as such a requirement requires a thorough substantive procedure and consideration of evidence. *However, no corresponding claim has been filed against the defendants in the main proceedings.* The purpose of interim relief is to implement interim measures to ensure the enforcement of a court judgement, not to substantially transform the legal relationships of the parties before a final judicial decision.

*(signed digitally)*

Kadi Karting
judge

This document was translated into English from its original version in Estonian by Estonian-English-Estonian sworn translator Urmas Pail who acts as a sworn translator in the Republic of Estonia on the basis of professional certificate No. 90, issued on 24 January 2017.

Address: Kõivu tee 28, 12112 Tallinn, ESTONIA; Telephone: +372 510 0030; E-mail: urmas.pail@gmail.com.

This translation is registered in the book concerning the professional activities of the sworn translator under registration number 144 on 19 March 2025 in Tallinn.

This document consists of twelve (12) sheets of paper bound by string and embossed seal.

The sworn translation only covers Estonian text in the document being translated.

