# EXHIBIT 2

## APOSTILLE
(Convention de La Haye du 5 octobre 1961)

1. Country  Estonia

This public document

2. has been signed by
   Kadi Karting

3. acting in the capacity of
   The judge

4. bears the seal/stamp of
   -

Certified

5. at  Tallinn
6. the  31.03.2025
7. by  Natalja Paško, Substitute Notary in the capacity of Notary Kätlin Aun-Janisk
8. No  25-0185434408
9. Seal
10. Signature



This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document and where appropriate, the authenticity of the seal or stamp which the public document bears.
This Apostille does not certify the content of the document for which it was issued.
This Apostille is signed and can be verified on the Apostille register owned by the Estonian Chamber of Notaries at www.notar.ee/apostill by following the section "Verification of apostille". To verify the apostille use the date of certification and the number of certification.

---

(Right-hand column, partially visible:)

S

aja        28. märts 2025

lation SE vastu Ivan Turõgini
kogust tagasikutsumiseks ja
te määramiseks Polybius
sse

lahendamine

635, aadress: Uus tn 2, Jõhvi; e-
n)

(Advokaadibüroo WIDEN; e-
l)

kood: 14202836; asukoht: Tartu
irfa.com)

262250; registrijärgne elukoht:
inn, e-post: info@burfa.ee;

38502012230, registrijärgne
alevik, Rae vald, Harjumaa, e-

lvokaadibüroo LEVIN OÜ, e-

---

2. Keelata Ivan Turõginil (isikukood: 38501262250) ja Sergei Potapenkol (isikukood: 38502012230) anda Polybius Foundation SE (registrikood: 14202836) nimel nõusolek Polybius Foundation SE varade konfiskeerimiseks Ameerika Ühendriikide kasuks või loobuda Polybius Foundation SE nimel vastuväidetest või nõuetest seoses nimetatud konfiskeerimisega, samuti keelata anda nimetatud konfiskeerimismenetluses nõusolek Polybius Foundation SE varade ülekandmiseks Ameerika Ühendriikidele.

3. Keelata Ivan Turõginil ja Sergei Potapenkol takistada Tartu Maakohtu 12.03.2025 määrusega nr 2-25-3440 määratud Polybius Foundation SE (registrikood: 14202836) ajutiste haldusnõukogu liikmete vandeadvokaat Martin Pärna (Pärn) (isikukood: 37710020012), vandeadvokaat Daniil Savitski (isikukood: 38905040251) ja Urmas Võimre (isikukood: 37902130277) tegevust resolutsiooni p-s 2 nimetatud konfiskeerimismenetluse raames, näiteks piirata haldusnõukogu asendusliikmete juurdepääsu Polybius Foundation SE varale või teabele.

1



# KOHTUMÄÄRUS
*Hagi täiendav tagamine*

| | | |
|---|---|---|
| Määruse tegemise koht ja aeg | Tartu Maakohus Viljandi kohtumaja | 28. märts 2025 |
| Tsiviilasja number ja hagi ese | 2-25-3440 **Pilatus OÜ hagi Polybius Foundation SE vastu Ivan Turõgini ja Sergei Potapenko haldusnõukogust tagasikutsumiseks ja avaldus uute asendusliikmete määramiseks Polybius Foundation SE haldusnõukogusse** hagimenetlus | |
| Menetlustoiming | Hagi täiendava tagamise taotluse lahendamine | |
| Kohtunik | Kadi Karting | |
| Hageja | Pilatus OÜ (registrikood: 14314535, aadress: Uus tn 2, Jõhvi; e-post: pilatus_ou@protonmail.com) | |
| Hageja lepinguline esindaja | vandeadvokaat Magnus Braun (Advokaadibüroo WIDEN; e-post: magnus.braun@widen.legal) | |
| Kostja I | Polybius Foundation SE (registrikood: 14202836; asukoht: Tartu mnt 43, Tallinn; e-post: info@burfa.com) | |
| Kostja II | Ivan Turõgin (isikukood: 38501262250; registrijärgne elukoht: Kuusenõmme tee 19, Tallinn, e-post: info@burfa.ee; ivan@burfa.com) | |
| Kostja III | Sergei Potapenko (isikukood: 38502012230, registrijärgne elukoht: Järvemetsa tee 5, Peetri alevik, Rae vald, Harjumaa, e-post: sergei@burfa.com) | |
| Kostjate II ja III lepinguline esindaja | Vandeadvokaat Paul Keres (Advokaadibüroo LEVIN OÜ, e-post: paul.keres@levinlaw.ee) | |

**RESOLUTSIOON**
1. Rahuldada hagi täiendava tagamise taotlus <u>osaliselt</u>.
2. **Keelata Ivan Turõginil (isikukood: 38501262250) ja Sergei Potapenkol (isikukood: 38502012230) anda Polybius Foundation SE (registrikood: 14202836) nimel nõusolek Polybius Foundation SE varade konfiskeerimiseks Ameerika Ühendriikide kasuks või loobuda Polybius Foundation SE nimel vastuväidetest või nõuetest seoses nimetatud konfiskeerimisega, samuti keelata anda nimetatud konfiskeerimismenetluses nõusolek Polybius Foundation SE varade ülekandmiseks Ameerika Ühendriikidele.**
3. **Keelata Ivan Turõginil ja Sergei Potapenkol takistada Tartu Maakohtu 12.03.2025 määrusega nr 2-25-3440 määratud Polybius Foundation SE (registrikood: 14202836) ajutiste haldusnõukogu liikmete vandeadvokaat Martin Pärna (Pärn) (isikukood: 37710020012), vandeadvokaat Daniil Savitski (isikukood: 38905040251) ja Urmas Võimre (isikukood: 37902130277) tegevust resolutsiooni p-s 2 nimetatud konfiskeerimismenetluse raames, näiteks piirata haldusnõukogu asendusliikmete juurdepääsu Polybius Foundation SE varale või teabele.**

4. Keelata Ivan Turõginil ja Sergei Potapenkol osaleda Polybius Foundation SE (registrikood: 14202836) haldusnõukogu liikmetena otsustusprotsessides, mis on seotud või tulenevad Sergei Potapenko ja Ivan Turõgini vastu Ameerika Ühendriikides algatatud kriminaalmenetlusest nr 2:22-CR-00185-RSL (Ameerika Ühendriigid vs Ivan Turõgin ja Sergei Potapenko) ja selle raames Polybius Foundation SE nimel sõlmitud kohtulikest kokkulepetest, eelkõige küsimustes, kus esineb konflikt Ivan Turõgini ja Sergei Potapenko ning Polybius Foundation SE huvide vahel.
5. Tunnistada hagi tagamise määrus viivitamata täidetavaks (TsMS § 367 lg 5).
6. Toimetada määrus kätte hageja lepingulisele esindajale ning kostjale I, kostjate II ja III lepingulisele esindajale.

### Edasikaebamise kord

Käesoleva määrusele võivad menetlusosalised esitada määruskaebuse (TsMS § 390 lg 1). Määruskaebuse esitamine ei peata käesoleva määruse täitmist (TsMS § 390 lg 2). Kirjalik määruskaebus tuleb esitada Tartu Maakohtu Viljandi kohtumaja kaudu Tartu Ringkonnakohtule 15 päeva jooksul alates määruse määruskaebuse esitajale kättetoimetamisest (TsMS §§ 660-661).

### ASJAOLUD

1. Pilatus OÜ on esitanud 05.03.2025 hagi Polybius Foundation SE (edaspidi ka: *PFSE*), Ivan Turõgini ja Sergei Potapenko vastu Ivan Turõgini ja Sergei Potapenko tagasikutsumiseks Polybius Foundation SE (edaspidi ka: *PFSE*) haldusnõukogust ja avalduse haldusnõukogusse asendusliikmete määramiseks. Hagi on võetud 26.03.2025 kohtu menetlusse.

2. Hageja esitas 11.03.2025 hagi tagamise taotluse, mille kohus *osaliselt* 12.03.2025 määrusega rahuldas, määrates PFSE haldusnõukogu piiratud volitustega ajutisteks liikmeteks kuni tsiviilasjas nr 2-25-3440 kohtulahendi jõustumiseni vandeadvokaat Martin Pärna, vandeadvokaat Daniil Savitski ja Urmas Võimre, kelle volitused haldusnõukogu liikmetena piirduvad Ameerika Ühendriikide kohtule kriminaalasja nr 2:22-CR-00185-RSL (Ameerika Ühendriigid vs Ivan Turõgin ja Sergei Potapenko) raames Polybius Foundation SE arestitud varade tagasisaamiseks nn „süütu omaniku" nõude esitamisega ja selleks vajalike toimingute teostamisega ning dokumentide esitamisega (sh PFSE-le kuuluvate varade arestist vabastamise ja PFSE-le tagastamise taotlemisega) ning Eesti Vabariigi äriregistrile PFSE majandusaasta aruannete esitamisega. Samuti kohustas kohus I. Turõginit ja S. Potapenkot või PFSE raamatupidamisdokumente valdavaid isikuid andma M. Pärnale, D. Savitskile või U. Võimrele üle PFSE raamatupidamisdokumendid 10 päeva jooksul alates käesoleva hagi tagamise määruse kättetoimetamisest.

3. Hageja esitas 25.03.2025 hagi tagamise täiendava taotluse, mille võttis tagasi, mistõttu kohus jättis selle 27.03.2025 määrusega läbi vaatamata.

4. Hageja esitas 27.03.2025 hagi tagamise täiendava taotluse, milles taotleb, et kohus:
   - laiendaks PFSE haldusnõukogu piiratud volitustega juhatuse asendusliikmete volitusi kuni tsiviilasjas nr 2-25-3440 tehtava kohtulahendi jõustumiseni selliselt, et asendusliikmetel on lisaks Tartu Maakohtu 12.03.2025 hagi tagamise määruses märgitud õigustele õigus nõuda sisse PFSE nimel nõudeid Burfa Media OÜ (registrikood: 12495372) vastu (sh esitada pankrotihoiatust, pankrotiavaldust ning teha kõiki muid toiminguid asendusliikmete äranägemisel, mis on nõude sissenõudmiseks vajalikud);
   - keelaks I. Turõginil ja S. Potapenkol anda PFSE nimel nõusolek PFSE varade konfiskeerimiseks Ameerika Ühendriikide kasuks või loobuda PFSE vastuväidetest või nõuetest seoses nimetatud konfiskeerimisega;
   - keelaks I. Turõginil ja S. Potapenkol anda nõusolek PFSE varade ülekandmiseks või muul viisil osaleda või aidata kaasa tehingutele, mis teenivad Ameerika Ühendriikide valitsuse PFSE konfiskeerimispüüdlusi;

2

- keelaks I. Turõginil ja S. Potapenkol takistada kohtumäärusega määratud haldusnõukogu liikmete tegevust, sealhulgas piirata haldusnõukogu asendusliikmete juurdepääsu PFSE varale või teabele;
- keelaks I. Turõginil ja S. Potapenkol osaleda haldusnõukogu liikmetena otsustusprotsessides, mis on seotud või tulenevad nende vastu algatatud kriminaalmenetlusest ja/või sõlmitud kohtulikest kokkulepetest, sealhulgas kõikides küsimustes, kus esineb huvide konflikt;
- tunnistada hagi tagamise määrus viivitamata täidetavaks (TsMS § 467 lg 5).

5. Hagi tagamise täiendava taotluse põhjendustes märgitakse, et 24.03.2025 e-kirjas kinnitas vandeadvokaat Jennifer A. Williams *(dtl 1053-1056, lisad 3-4, s.o Jennifer A. Williamsi kinnituskiri ja selle tõlge)*, et kuigi kostjatel II ja III on kaks viiest haldusnõukogu kohast, on neil endiselt võimalus ja ka kohustus takistada PFSE-l kasutada oma õigust vaidlustada varade konfiskeerimist Ameerika Ühendriikide kasuks. Kohtulikud kokkulepped kohustavad kostjaid II ja III toetama ja abistama Ameerika Ühendriikide valitsuse jõupingutusi kõigi arestitud varade, sh PFSE-le kuuluvate varade konfiskeerimisel. Seega on kostjad II ja III kohustatud kasutama kogu oma volitust konfiskeerimise elluviimiseks ja neil on keelatud toetada mistahes toiminguid, mis on sellega vastuolus. Kui kostjad II ja III seda kohustust rikuvad, on Ameerika Ühendriikide valitsusel õigus taganeda kohtulikest kokkulepetest, taastada kõik 18 süüdistuspunkti ja nõuda sadadesse miljonitesse USA dollaritesse ulatuvat rahalist karistust ja/või taotleda aastakümnete pikkuse vangistuse määramist. Haldusnõukogu liikmetena on kostjatel II ja III endiselt võimalik anda nõusolek PFSE arestitud varade konfiskeerimiseks. PFSE põhikirja p 4.6. sätestab, et kahel haldusnõukogu liikmel on õigus ühingut ühiselt esindada. Samuti ei kohusta põhikiri huvide konfliktis tegutsevaid haldusnõukogu liikmeid ennast taandama. Seega kujutab kostjate II ja III kuulumine PFSE haldusnõukogusse jätkuvalt lahendamatut huvide konflikti ja tõsist ohtu PFSE õiguste ja varade kaitsele, v.a juhul, kui kostjatel II ja III keelatakse tegutseda vastuolus PFSE huvi ja õigusega esitada vara konfiskeerimise vastu nõue. Eeltoodust tulenevalt on PFSE huvide kaitseks vajalik kohaldada järgmisi abinõusid:
   i. keelata kostjatel II ja III otseselt, kaudselt või vaikimisi anda PFSE nimel nõusolek PFSE varade konfiskeerimiseks Ameerika Ühendriikide kasuks või loobuda PFSE nimel vastuväidetest või nõuetest seoses nimetatud konfiskeerimisega;
   ii. keelata kostjatel II ja III anda nõusolek PFSE varade ülekandmiseks või muul viisil osaleda või aidata kaasa tehingutele, mis teenivad Ameerika Ühendriikide valitsuse PFSE vara konfiskeerimispüüdlusi;
   iii. keelata kostjatel II ja III takistada kohtumäärusega määratud haldusnõukogu liikmete tegevust, sealhulgas piirata haldusnõukogu asendusliikmete juurdepääsu PFSE varale või teabele;
   iv. keelata kostjatel II ja III osaleda haldusnõukogu liikmetena otsustusprotsessides, mis on seotud või tulenevad nende vastu algatatud kriminaalmenetlusest ja/või sõlmitud kohtulikest kokkulepetest, sealhulgas kõikides küsimustes, kus esineb huvide konflikt.

6. PFSE haldusnõukogu ajutiste liikmete 25.03.2025 edastatud pöördumisest A.A.-le nähtub, et: PFSE-l on nõue Burfa Media OÜ vastu nõue suurusjärgus ca 160 000 000 eurot (1 500 BTC + lisanduv intress ja 9 200 ETH + lisanduv intress). Konfiskeerimismäärusest nähtuvalt on konfiskeerimise esemeks ka Burfa Media OÜ vara. Kui see konfiskeeritakse, muutub ühingu nõude rahuldamine võimatuks. Ühingule kahju tekkimise vältimiseks tuleks laiendada ajutiste liikmete volitusi Burfa Media OÜ vastu nõude esitamisele. PFSE-l puuduvad ajutiste haldusnõukogu liikmete käsutuses olevad vahendid eelseisva kohtumenetluse finantseerimiseks.

7. Haldusnõukogu ajutised liikmed on tutvunud tsiviilasja nr 2-25-3440 materjalidega ja teadlikud sellest, et kostja II ja kostja III käes on 10 624,81 Ethereumi (ETH), mis on PFSE vara. Muud likviidset vara ei ole ajutised liikmed senise tegevuse käigus tuvastanud. Haldusnõukogu ajutised liikmed on pöördunud Ameerika Ühendriikides tegutsevate advokaadibüroode poole hinnapakkumiste saamiseks seoses Ameerika Ühendriikides eelseisva kohtumenetlusega, paludes ühtlasi esitada hinnang menetluse eeldatavale kogukulule, sealhulgas õigusteenuste, ekspertide ja

muude seotud kulude osas. Konfiskeerimismäärus on tehtud 20.03.2025, mistõttu tuleb süütu omaniku nõue Ameerika Ühendriikides esitada hiljemalt 20.04.2025. Seega on PFSE-le pöördumatu kahju tekkimise vältimiseks vajalik kohustada kostjat II ja kostjat III ajutistele haldusnõukogu liikmetele üle andma 1 000 000 euro väärtuses ühingu vara, et finantseerida kohtumenetlust Ameerika Ühendriikides (hinnapakkumiste kohaselt minimaalne eelarve 762 500 USA dollarit) ja maksta kohtu määratud haldusnõukogu liikmetele tasu 17 200 eurot kuus (3 x 5000 eurot, millele lisandub käibemaks). Arvestades senist töömahtu ning kaasnevat vastutust, paluvad ajutised liikmed kinnitada iga liikme nõutava tasu suuruse, s.o 5000 eurot kuus neto (kui töömaht ühes kuus ületab 20 tundi, lisandub kuutasule tunnitasu 250 eurot/h neto). Eelnevale lisandub käibemaks *(dtl 1057-1058, PFSE ajutiste haldusnõukogu liikmete pöördumine)*.

8. Hageja on hagiavalduses selgitanud, et PFSE-l on Burfa Media OÜ vastu Burfa Media OÜ-le 2022. aastal antud laenudest tulenev 160 miljoni euro suurune nõue *(dtl 258, dtl 420 jj))*. Kostjad II ja III on Burfa Media OÜ juhatuse liikmed ja tegelikud kasusaajad, mistõttu välistab huvide konflikt nõude maksmapaneku nende kaudu. Et vältida eelviidatud nõude aegumist või selle hilisemat sissenõudmise võimatust ja sellest tulenevalt PFSE-le sadadesse miljonitesse eurodesse ulatuva kahju tekkimist, on vajalik hagi tagamise korras laiendada Tartu Maakohtu 12.03.2025 määrusega ajutistele haldusnõukogu liikmetele antud volitusi selliselt, et oleks tagatud PFSE nõude Burfa Media OÜ vastu viivitamatu sissenõudmise võimalus.

9. Hageja on põhistanud, et kostjate II ja III kuulumine PFSE haldusnõukogusse kujutab jätkuvalt ohtu PFSE õigusele ja võimalusele vaidlustada endale kuuluvate varade konfiskeerimist Ameerika Ühendriikides. Seega on vältimatult vajalik hagi tagamiseks keelata kostjatel käesoleva hagi tagamise avalduse p-s 18 märgitud toimingute tegemine, et vältida olukorda, kus PFSE jääb ilma oma õigusest esitada süütu omaniku nõue ning kasutada õiguskaitsevahendeid ühingu vara konfiskeerimise vaidlustamiseks. Hagi täiendav tagamine on põhjendatud ja vajalik PFSE-le olulise kahju tekkimise vältimiseks. Hagi täiendavalt tagamata oleks 12.03.2025 hagi tagamise määrus sisult toimetu, sest (i) kostjatel II ja III oleks endiselt võimalik PFSE-le kahju tekitada ning (ii) kohtu määratud haldusnõukogu asendusliikmetel ei oleks võimalik tagada PFSE õiguste kaitset. PFSE nõude rahuldamine Burfa Media OÜ vastu muutub võimatuks, sest USA-s toimuva konfiskeerimismenetluse raames konfiskeeritakse ka Burfa Media OÜ vara (vt Lisa 1 esialgne konfiskeerimismäärus lk 4, punkt l (read 7-9) punkt m. (read 10-12); lk 8 punkt bb. read 7-13. Kümnetesse miljonitesse eurodesse ulatuva kahju tekkimist PFSE-le saab vältida juhatuse asendusliikmete volitusi laiendades.

10. TsMS § 378 lg 1 p 3 näeb hagi tagamise abinõuna ette kostjal teatud tehingute ja toimingute tegemise keelamise. Abinõu rakendamist taotledes tuleb hagi tagamise avalduses täpselt kirjeldada keelatavaid tehinguid ja toiminguid. Kohtumääruses, milles kostjal keelatakse teatud tehingute või toimingute tegemine, tuleb samuti kõnealused tehingud ja toimingud määratleda selgelt ja täpselt. TsMS § 378 lg 1 p-s 3 sätestatud abinõu on mh võimalik rakendada TsMS § 377 lg 2 kohaselt õigussuhte esialgseks reguleerimiseks. Toimingute tegemise keelu abil on võimalik takistada kostjate II ja III sellist tegevust, mis kahjustab hageja õigusi kohtumenetluse ajal.

11. TsMS § 378 lg 1 p 10 alusel võib hagi tagamise abinõuks olla ka kohtu poolt vajalikuks peetud muu abinõu. Sellest tulenevalt ei ole TsMS §-s 378 loetletud hagi tagamise abinõude loetelu ammendav. Riigikohus on kinnitanud, et vaidlusaluse õigussuhte reguleerimisel TsMS § 377 lg 2 järgi on kohtul ulatuslik diskretsiooniõigus ja seetõttu võib kohus otsustada hageja taotlusel hagi tagada ka muude kui §-s 378 loetletud hagi tagamise abinõudega. Hageja palub hagi tagamise korras laiendada PFSE haldusnõukogu piiratud volitustega ajutiste liikmete volitusi kuni tsiviilasjas nr 2-25-3440 tehtava kohtulahendi jõustumiseni selliselt, et ajutistel liikmetel on lisaks Tartu Maakohtu 12.03.2025 hagi tagamise määruses märgitud volitustele volitus Burfa Media OÜ vastu laenulepingutest tuleneva nõude sissenõudmiseks, selleks vajalike toimingute teostamiseks ja dokumentide esitamiseks (sh pankrotihoiatuse ning pankrotiavalduse esitamiseks).

4

5

12. Taotletavad hagi tagamise abinõud ei koorma kostjaid enam kui hageja põhjendatud huvide kaitseks vajalik. Ühtlasi puuduvad kostjaid II ja III vähem koormavad võimalikud abinõud. Hageja on veenvalt põhistanud ja tõendanud, et kostjate II ja III keelamine käesoleva avalduse p-s 18 märgitud toimingute tegemisest ja haldusnõukogu ajutiste liikmete volituste laiendamine nõude esitamisele Burfa Media OÜ vastu võimaldab ära hoida pöördumatu kahju tekkimise PFSE-le. Ühtlasi tagavad käesoleva hagi tagamise avaldusega taotletavad abinõud 12.03.2025 hagi tagamise määruse täitmise, kuivõrd kostjatel II ja III käesoleva avalduse resolutsioonis märgitud toimingute tegemise keelamine tagab ajutiste haldusnõukogu liikmete võimaluse PFSE varade tagastamise nõude edukaks esitamiseks Ameerika Ühendriikides.

13. Kohtulike kokkulepete sisu ja nendes sätestatud kostjate II ja III kohustusi arvestades on ilmne, et kostjatel II ja III lasub kohustus vaielda vastu mistahes hageja taotletavale hagi tagamise abinõule. Samuti on usutav, et kostjatel II ja III on kohustus informeerida USA-d kõikidest asjaoludest, mis võivad konfiskeerimist ohustada ning teha teatavaks ka hagi tagamise avalduse sisu. Kuigi kostjad II ja III ei ole seni teinud toiminguid, mis PFSE poolt süütu omaniku nõude esitamise võimatuks muudaksid, annaks hageja poolt taotletud abinõude sisu alust sellisteks toiminguteks kiirendatud korras.

14. Arvestades konfiskeerimismäärusega seatud süütu omaniku nõude esitamise tähtaega (20.04.2025), on hageja põhjendatud huvide kaitseks vajalik lahendada hagi tagamise avaldus kostjaid ära kuulamata esimesel võimalusel. Üksnes selliselt on tagatud 12.03.2025 hagi tagamise määrusega määratud abinõude eesmärgi saavutamine, s.o ajutistele haldusnõukogu liikmetele volituste andmine PFSE arestitud varade tagasisaamiseks Ameerika Ühendriikides nõude esitamiseks ja selleks vajalike toimingute teostamiseks. Kostjate II ja III ärakuulamine enne hagi tagamise taotluse lahendamist seab ohtu eelviidatud eesmärgi saavutamise. Hagi tagamise eesmärgi täitmiseks on viivitamatu sekkumine vältimatult vajalik.

15. Ühtlasi seaks hagi tagamise eesmärgi ohtu kostjate II ja III ärakuulamine seoses ajutiste haldusnõukogu liikmete volituste laiendamisega Burfa Media OÜ vastu nõuete esitamiseks ja sellega seonduvate toimingute tegemiseks. Konfiskeerimismäärusest nähtuvalt on konfiskeerimise esemeks ka Burfa Media OÜ vara. Kui see konfiskeeritakse, muutub PFSE nõude rahuldamine võimatuks. Kostjate II ja III ärakuulamine muudaks suure tõenäosusega taotletava abinõu toimetuks, kuivõrd kostjatel II ja III on kohustus käesolevast hagi tagamise avaldusest DoJ-d teavitada, millest tulenevalt võidakse Burfa Media OÜ vara konfiskeerimine viia ellu viivitamatult.

## KOHTU PÕHJENDUSED

16. Kohus leiab, et täiendav taotlus hagi tagamiseks tuleb <u>rahuldada osaliselt</u>.

17. Hagi tagamisel tuleb kohtul kontrollida, kas hagi tagamise taotlus vastab TsMS § 381 lg-s 1 sätestatud nõuetele (sh on esitatud TsMS §-s 377 nimetatud asjaolud), kas hagiavaldus vastab TsMS § 363 lg 1 p-des 1–3 sätestatud nõuetele, kas hagi on lubatav (eelkõige TsMS § 371 lg 1, § 423 lg 1, § 428) õiguslikult perspektiivikas (TsMS § 371 lg 2, § 423 lg 2) ning kas nõue ja selle tagamise aluseks olevad asjaolud on põhistatud (TsMS § 235 ja § 381 lg 2) (vt RKTKm nr 3-2-1-83-16, p-d 13–18). Hageja nõue on õiguslikult perspektiivitu juhul, kui hagis esitatud asjaolude tõendatuse korral ei oleks nõuet võimalik rahuldada ühelgi materiaalõiguslikul alusel (RKTKm nr 3-2-1-193-13, p 12). Kohus on jätkuvalt seisukohal, et esitatud hagi võib olla eelnimetatud normide tähenduses õiguslikult perspektiivikas.

18. TsMS § 377 lg 2 sätestab, et sellise hagi tagamiseks, mille esemeks ei ole rahaline nõue kostja vastu, võib kohus hageja taotlusel esialgselt reguleerida vaidlusalust õigussuhet, eelkõige asja kasutusviisi, kui see on vajalik olulise kahju või omavoli vältimiseks või muul põhjusel. Seda võib teha sõltumata sellest, kas on alust arvata, et hagi tagamata jätmine võib raskendada kohtuotsuse täitmist või teha selle võimatuks.

19. Kohus on 12.03.2025 hagi tagamise esmases määruses mh selgitanud, et TsMS § 378 lg 4 kohaselt tuleb hagi tagava abinõu valikul tuleb arvestada, et kohaldatav abinõu koormaks kostjat üksnes niivõrd, kuivõrd seda võib pidada hageja õigustatud huvisid ja asjaolusid arvestades põhjendatuks. Riigikohus on avaldanud, et vaidlusaluse õigussuhte reguleerimisel TsMS § 377 lg 2 järgi on kohtul ulatuslik diskretsiooniõigus (RKTKm nr 3-2-1-51-10, p 11). Kohus võib sellise hagi tagamiseks, mille esemeks ei ole rahaline nõue kostja vastu, hageja taotlusel esialgselt reguleerida vaidlusalust õigussuhet. Sellise hagi tagamise (vaidlusaluse õigussuhte esialgse reguleerimise) eesmärk on eelkõige olulise kahju või omavoli vältimine (TsMS § 377 lg 2), tagamaks menetluse ajaks õigusrahu. Kohus on sisuliselt nõustunud hageja käsitlusega, et Polybius Foundation SE tegutsemine oma vara võimalikul tagasinõudmisel ja konfiskeerimise vältimisel sisuliselt halvatud ning eelduslikult ei ole äriühingul võimalik võtta vastu otsuseid ega teha toiminguid, mis võimaldaksid Ameerika Ühendriikides toimuva kriminaalmenetluse raames aegkriitilistes tingimustes Polybius Foundation SE vara kaitseks vajalikke samme astuda. Vara konfiskeerimise vaidlustamiseks on vaja äriühingu juhtorganil ilmselt juba lähiajal vajalikke toiminguid teha ja hagejad on veenvalt kostja I ja kostjate II ja III vahelisele huvide konfliktile viidates põhistanud, miks on vaja täiendavaid kohtupoolseid meetmeid, et konfiskeerimismenetluses kostja I huvides takistamatult nõuet esitada.

20. Hetkel on PFSE haldusnõukogu 5 liiget, sh kolm kohtu määratud ajutist liiget ning senised liikmed kostja II ja kostja III. Kohus osundab, et *Euroopa Liidu Nõukogu 8. oktoobri 2001 määruse (EÜ) nr 2157/2001 Euroopa äriühingu (SE) põhikirja kohta* (edaspidi: määrus) artikkel 50 lg 1 kohaselt kui nimetatud määrus või SE põhikiri ei sätesta teisiti, kehtivad SE organite otsustusvõimelisuse ja otsuste tegemise kohta järgmised sise-eeskirjad: a) otsustusvõimelisus: vähemalt pool liikmetest peab olema kohal või esindatud; b) otsuste tegemine: enamus liikmetest peab olema kohal või esindatud. *Euroopa Liidu Nõukogu määruse (EÜ) nr 2157/2001 Euroopa äriühingu (SE) põhikirja kohta rakendamise seaduse* (edaspidi: SEPS) § 24 lg 4 järgi ei või haldusnõukogu liige võtta osa hääletamisest, millega otsustatakse kolmanda isiku ja SE vaheliseks tehinguks nõusoleku andmist, kui sellest tehingust tulenevad *haldusnõukogu liikme huvid on vastuolus SE huvidega*. Sellest võib omakorda kohtu hinnangul teha õigustatud järelduse, et haldusnõukogu liikmetel peaks olema keelatud ka sellistes tehingutes või toimingutes SE-d esindada. Selles tulenevalt on kohtu hinnangul põhjendatud hagi tagamise taotlus osas, milles taotletakse, et kohus keelaks õigussuhte esialgse reguleerimise raames kostjatel II ja III anda PFSE nimel nõusolek PFSE varade konfiskeerimiseks Ameerika Ühendriikide kasuks või loobuda PFSE vastuväidetest või nõuetest seoses nimetatud konfiskeerimisega, keelaks kostjatel II ja III anda nõusolek PFSE varade ülekandmiseks või muul viisil osaleda või aidata kaasa tehingutele, mis teenivad Ameerika Ühendriikide valitsuse PFSE konfiskeerimispüüdlusi, keelaks kostjatel II ja III takistada kohtumäärusega määratud haldusnõukogu liikmete tegevust nimetatud konfiskeerimismenetluse raames, näiteks piirata haldusnõukogu asendusliikmete juurdepääsu PFSE varale või teabele ja keelaks kostjal II ja III osaleda PFSE haldusnõukogu liikmetena otsustusprotsessides, mis on seotud või tulenevad kostjate II ja III vastu Ameerika Ühendriikides algatatud kriminaalmenetlusest nr 2:22-CR-00185-RSL (Ameerika Ühendriigid vs Ivan Turõgin ja Sergei Potapenko) ja selle raames PFSE nimel sõlmitud kohtulikest kokkulepetest, eelkõige küsimustes, kus esineb konflikt kostjate II ja III ning PFSE huvide vahel. Eelnimetatud osas kuulub hagi tagamise taotlus kohtu täpsustatud sõnastuses rahuldamisele.

21. Kohtu hinnangul ei ole siiski veenvalt põhistatud taotlus anda õigussuhte esialgse reguleerimise korras ajutistele haldusnõukogu liikmetele õigus nõuda sisse PFSE nimel nõudeid Burfa Media OÜ (registrikood: 12495372) vastu (sh esitada pankrotihoiatust, pankrotiavaldust ning teha kõiki muid toiminguid). Kohtule esitatud nappide tõendite alusel ei ole võimalik tõsikindlalt tuvastada PFSE nõude suurust, ülekannete õiguslikku alust ja kogu nõude sissenõutavaks muutumise aega. Mh ilmneb A. Altementi 05.03.2025 kinnitustest Harju Maakohtule (dtl 421-422), *et 500 bitcoini ulatuses on 2022. aastal Burfa Media OÜ-le antud laenud dokumenteeritud 03.01.2022 laenulepinguga (dtl 464-469, 03.01.2022 laenuleping PF-BM 01/22 ja selle tõlge). Seoses I.*

6

*Turõgini ja S. Potapenko kinnipidamisega 2022. aastal, jäid laenud osaliselt dokumenteerimata st kirjalikke laenulepinguid ei ole minu parimate teadmiste kohaselt sõlmitud.*

22. Muus osas jääb kohus käesoleva tsiviilasja raames tehtud hagi tagamise taotlust lahendavates määrustes avaldatud põhjenduste juurde, sh märgib kordavalt, et hagi tagamise eesmärk on ajutiste meetmete rakendamine kohtuotsuse täitmise tagamiseks või olulise kahju või omavoli vältimiseks, mitte osapoolte õigussuhete sisuline ümberkujundamine enne lõplikku lahendit.

*(allkirjastatud digitaalselt)*

Kadi Karting
kohtunik

7

# DIGITAALALLKIRJADE KINNITUSLEHT

## ALLKIRJASTATUD FAILID

| NIMI | FAILI SUURUS |
|---|---|
| 250328_Karting_M_Pilatus OÜ vs Polybius Foundation SE, Turõgin, Potapenko_hagi tagamine_orah.docx | 64 KB |

## ALLKIRJASTAJAD

| nr. | NIMI | ISIKUKOOD | AEG |
|---|---|---|---|
| 1 | KADI KARTING | 48412164713 | 28.03.2025 14:42:11 +02:00 |

**ALLKIRJA KEHTIVUS**

ALLKIRI ON KEHTIV

**ROLL/RESOLUTSIOON**

Kohtunik

**ALLKIRJASTAJA ASUKOHT (LINN, MAAKOND, INDEKS, RIIK)**

Viljandi

**ALLKIRJASTAJA SERTIFIKAADI SEERIANUMBER**

21:92:b3:f7:1b:e9:b2:84:dc:14:db:0f:a2:57:17:1d

**SERTIFIKAADI VÄLJAANDJA NIMI** | **VÄLJAANDJA VÕTME IDENTIFIKAATOR**

ESTEID2018 | D9 AC 70 DB 5F 7E BE 94 F8 A0 E4 BE 47 A2 D0 34 AD 9A 2A 12

**ALLKIRJA SÕNUMILÜHEND**

30 31 30 0D 06 09 60 86 48 01 65 03 04 02 01 05 00 04 20 37 F7 2A 67 1D 5E C7 14 69 48 33 E6 B9 1E 88 02 7D 00 E3 66 5D 20 A4 6B 09 20 9F 07 C6 3F D1 94

Selle kinnituslehe lahutamatu osa on lõigus **"Allkirjastatud failid"** nimetatud failide esitus paberil.

**MÄRKUSED**

Käesolev kinnitusleht on informatiivne, milles olev teave kinnitab vaid, et selle äratoodud räsiga allkirjastatud fail eksisteerib.
Kinnitusleht ei oma iseseisvat tõendusväärtust. Osapoolte tahteavalduse kehtivust saab kontrollida ainult digitaalselt allkirjastatud failist.

TRANSLATED FROM ESTONIAN



# COURT ORDER
*Additional interim relief*

| | | |
|---|---|---|
| Place and time of making the order | Tartu District Court Viljandi Courthouse | 28 March 2025 |
| Civil matter number and object of the action | 2-25-3440<br>Pilatus OÜ's action against Polybius Foundation SE for the removal of Ivan Turõgin and Sergei Potapenko from the administrative board and application for the appointment of new alternate members to the administrative board of Polybius Foundation SE<br>action | |
| Procedural act | Adjudication of the application for additional interim relief. | |
| Judge | Kadi Karting | |
| Plaintiff | Pilatus OÜ (registry code: 14314535, address: Uus tn 2, Jõhvi; e-mail: pilatus_ou@protonmail.com) | |
| Contractual representative of the plaintiff | Attorney at Law Magnus Braun (Advokaadibüroo WIDEN; e-mail: magnus.braun@widen.legal) | |
| Defendant I | Polybius Foundation SE (registry code: 14202836; seat: Tartu mnt 43, Tallinn; e-mail: info@burfa.com) | |
| Defendant II | Ivan Turõgin (personal identification code: 38501262250; registered address: Kuusenõmme tee 19, Tallinn, e-mail: info@burfa.ec; ivan@burfa.com) | |
| Defendant III | Sergei Potapenko (personal identification code: 38502012230, registered address: Järvemetsa tee 5, Peetri small town, Rae rural municipality, Harju County, e-mail: sergei@burfa.com) | |
| Contractual representative of defendants II and III | Attorney-at-law Paul Keres (Advokaadibüroo LEVIN OÜ, e-mail: paul.keres@levinlaw.ee) | |

## DECISION
1. To grant the application for additional interim relief **in part**
2. To prohibit Ivan Turõgin (personal identification code: 38501262250) and Sergei Potapenko (personal identification code: 38502012230) from giving consent on behalf of Polybius Foundation SE (registry code: 14202836) to the confiscation of Polybius Foundation SE's assets for the benefit of the United States or from waiving objections or claims on behalf of Polybius Foundation SE in connection with the said confiscation, as well as to prohibit giving consent in the said confiscation proceedings to the transfer of Polybius Foundation SE's assets to the United States.
3. To prohibit Ivan Turõgin and Sergei Potapenko from obstructing the activities of the temporary members of the administrative board of Polybius Foundation SE (registry code: 14202836), attorney-at-law Martin Pärn (personal identification code: 37710020012), attorney-at-law Daniil Savitski (personal identification code: 38905040251) and Urmas Võimre (personal identification code: 37902130277), appointed by Tartu District Court on 12 March 2025 by court order No. 2-25-3440, within the framework of the confiscation proceedings referred to in clause 2 of the decision, for example, to restrict the access of the alternate members of the administrative board to the property or information of Polybius Foundation SE.

<u>**TRANSLATED FROM ESTONIAN**</u>

4. To prohibit Ivan Turõgin and Sergei Potapenko from participating as members of the administrative board of Polybius Foundation SE (registry code: 14202836) in decision-making processes related to or arising from criminal proceedings initiated against Sergei Potapenko and Ivan Turõgin in the United States, criminal proceedings No. 2:22-CR-00185-RSL (United States v. Ivan Turõgin and Sergei Potapenko), and from court settlements concluded on behalf of Polybius Foundation SE within the framework thereof, in particular in matters where there is a conflict of interests between Ivan Turõgin and Sergei Potapenko and Polybius Foundation SE.
5. To deem the interim relief order immediately enforceable (subsection 5 of § 367 of the Code of Civil Procedure).
6. To serve the court order on the plaintiff's contractual representative and on defendant I, on the contractual representative of defendants II and III.

Appeal procedure

The parties to the proceeding may file an appeal against this order (subsection 1 of § 390 of the Code of Civil Procedure). The filing of appeal does not suspend enforcement of this interim relief order (subsection 2 of § 390 of the Code of Civil Procedure). A written appeal against the order must be submitted to the Tartu Circuit Court through the Viljandi courthouse of the Tartu District Court within 15 days from the date of service of the ruling to the appellant (§§ 660-661 of the Code of Civil Procedure).

CIRCUMSTANCES

1. Pilatus OÜ has filed an action against Polybius Foundation SE (hereinafter also referred to as *PFSE*) on 05 March 2025 for the removal of Ivan Turõgin and Sergei Potapenko from the administrative board and application for the appointment of alternate members to the administrative board of Polybius Foundation SE (hereinafter also referred to as *PFSE*). The action has been accepted for court proceedings on 26 March 2025.

2. The plaintiff filed a request for interim relief on 11 March 2025, which the court granted *in part* with a court order of 12 March 2025, appointing attorney-at-law Martin Pärn (personal identification code: 37710020012), attorney-at-law Daniil Savitski (personal identification code: 38905040251) and Urmas Võimre (personal identification code: 37902130277) as temporary members with limited powers of the administrative board of PFSE with the term of office until the entry into force of judicial decision in civil matter No. 2-25-3440, whose powers as members of the administrative board are limited to filing a so-called "innocent owner" claim with the United States court for the return of assets of Polybius Foundation SE seized within the framework of criminal case No. 2:22-CR-00185-RSL (United States of America vs. Ivan Turõgin and Sergei Potapenko) and performing the necessary actions and submitting documents (including requesting the release of assets belonging to PFSE from seizure and their return to PFSE) and submitting the annual reports of PFSE to the commercial register of the Republic of Estonia. The court also ordered I. Turõgin and S. Potapenko or persons in possession of PFSE's accounting documents to hand over the PFSE's accounting documents to M. Pärn, D. Savitski or U. Võimre within 10 days from the service of this interim relief order.

3. On 25 March 2025, the plaintiff filed an additional application for interim relief, which he withdrew, and therefore the court dismissed it by order of 27 March 2025.

4. On 27 March 2025, the plaintiff filed an additional application for interim relief, in which he requests that the court would:
   - expand the powers of the alternate members with limited powers of PFSE's administrative board until the entry into force of the judicial decision in civil matter no. 2-25-3440 so that the alternate members have, in addition to the rights specified in the interim relief order of Tartu District Court of 12 March 2025, the right to collect claims against Burfa Media OÜ (registry code: 12495372) on behalf of PFSE (including filing a bankruptcy warning, a bankruptcy petition and performing all other actions at the discretion of the alternate members that are necessary for the collection of the claim);
   - prohibit I. Turõgin and S. Potapenko from giving consent, on behalf of PFSE, to the seizure of PFSE's assets for the benefit of the United States or from waiving PFSE's objections or claims in connection with such seizure;
   - prohibit I. Turõgin and S. Potapenko from consenting to the transfer of PFSE's assets or otherwise participating in or facilitating transactions that serve the United States government's efforts of confiscation with regard to PFSE;

2

- prohibit I. Turõgin and S. Potapenko from obstructing the activities of members of the administrative board appointed by a court order, including restricting the access of alternate members of the administrative board to PFSE's property or information;
- prohibit I. Turõgin and S. Potapenko from participating as members of the administrative board in decision-making processes related to or arising from criminal proceedings initiated against them and/or court settlements concluded, including in all matters where there is a conflict of interest;
- deem the interim relief order immediately enforceable (subsection 5 of § 467 of the Code of Civil Procedure).

5. The grounds for the additional request for interim relief state that in an email dated 24 March 2025, attorney-at-law Jennifer A. Williams confirmed *(digital file pages 1053-1056, annexes 3-4, i.e. Jennifer A. Williams' confirmation letter and its translation)*, that although defendants II and III hold two of the five seats on the administrative board, they still have the opportunity, and also the obligation, to prevent PFSE from exercising its right to challenge the seizure of assets for the benefit of the United States. The court settlements obligate defendants II and III to support and assist the United States government in its efforts to confiscate all seized assets, including assets belonging to PFSE. Defendants II and III are therefore required to use all their powers to effect the confiscation and are prohibited from supporting any action that is inconsistent with that. If defendants II and III breach this obligation, the United States government has the right to withdraw from the court settlements, reinstate all 18 counts of charges, and seek monetary penalties in the hundreds of millions of US dollars and/or seek decades of imprisonment. As members of the administrative board, defendants II and III are still able to consent to the confiscation of the assets seized by PFSE. Article 4.6 of PFSE's statutes states that two members of the administrative board have the right to jointly represent the company. The statutes also do not oblige members of the administrative board who are in a conflict of interest to resign. Therefore, the membership of defendants II and III on the PFSE's administrative board continues to constitute an unresolved conflict of interest and a serious threat to the protection of PFSE's rights and assets, unless defendants II and III are prohibited from acting contrary to PFSE's interests and right to file a claim against the confiscation of assets. Based on the above, it is necessary to apply the following measures to protect the interests of PFSE:
   i. prohibit defendants II and III from expressly, indirectly, or implicitly consenting on behalf of PFSE to the confiscation of PFSE's assets for the benefit of the United States or from waiving any objections or claims on behalf of PFSE in connection with said confiscation;
   ii. prohibit defendants II and III from consenting to the transfer of PFSE's assets or otherwise participating in or facilitating transactions that serve the United States government's efforts to confiscate PFSE's assets;
   iii. prohibit defendants II and III from obstructing the activities of members of the administrative board appointed by a court order, including restricting the access of alternate members of the administrative board to PFSE's property or information;
   iv. prohibit defendants II and III from participating as members of the administrative board in decision-making processes related to or arising from criminal proceedings initiated against them and/or court settlements concluded, including in all matters where there is a conflict of interest.

6. The address to A.A. sent by the temporary members of the PFSE's administrative board on 25 March 2025 shows that; PFSE has a claim against Burfa Media OÜ in the amount of approximately 160,000,000 euros (1,500 BTC + additional interest and 9,200 ETH + additional interest). As can be seen from the confiscation order, the assets of Burfa Media OÜ are also subject to confiscation. If they are confiscated, it becomes impossible to satisfy the company's claim. To prevent damage to the company, the powers of temporary members should be expanded to include filing a claim against Burfa Media OÜ. PFSE does not have the resources that are available to the temporary members of the administrative board to finance the upcoming legal proceedings.

7. The temporary members of the administrative board have reviewed the materials of civil matter No. 2-25-3440 and are aware that defendants II and III are in possession of 10,624.81 Ethereum (ETH), which is the property of PFSE. No other liquid assets have been identified by the temporary members in the course of their activities so far. The temporary members of the administrative board have contacted law firms operating in the United States to obtain quotes for the upcoming legal proceedings in the United States, requesting an estimate of the total expected cost of the proceedings, including legal services, experts and

**TRANSLATED FROM ESTONIAN**

other related costs. The confiscation order was made on 20 March 2025, therefore the innocent owner's claim in the United States must be filed no later than 20 April 2025. Therefore, in order to prevent irreparable damage to PFSE, it is necessary to order defendant II and defendant III to transfer to the temporary members of the administrative board EUR 1,000,000 of the company's assets to finance the legal proceedings in the United States (minimum budget of USD 762,500 according to the bids) and to pay remuneration to the members of the administrative board appointed by the court in the amount of EUR 17,200 per month (3 x EUR 5,000 plus VAT). Considering the workload to date and the associated responsibilities, the temporary members request that the amount of remuneration required for each member be confirmed, i.e. 5,000 euros per month net (if the workload in one month exceeds 20 hours, an hourly fee of 250 euros/h net will be added to the monthly fee). VAT will be added to the above *(digital file pages 1057-1058, address of the temporary members of the administrative board of PFSE).*

8. The plaintiff has explained in the statement of claim that PFSE has a claim of 160 million euros against Burfa Media OÜ arising from loans granted to Burfa Media OÜ in 2022 *(digital file page 258, digital file page 420 etc.)).* Defendants II and III are members of the management board and beneficial owners of Burfa Media OÜ, therefore a conflict of interest precludes the assertion of the claim through them. In order to prevent the aforementioned claim from lapse or its subsequent impossibility of collection and, as a result, the loss of hundreds of millions of euros for PFSE, it is necessary to extend the powers granted to the temporary members of the administrative board by the court order of Tartu District Court of 12 March 2025 as a means of interim relief in such a way as to ensure the possibility of immediate collection of PFSE's claim against Burfa Media OÜ.

9. The plaintiff has argued that the membership of defendants II and III on the PFSE's administrative board continues to pose a threat to PFSE's right and ability to challenge the confiscation of its assets in the United States. Therefore, it is imperative to prohibit the defendants from performing the acts specified in clause 18 of this application for interim relief in order to avoid a situation where PFSE is deprived of its right to file an innocent owner's claim and use legal remedies to challenge the confiscation of the company's assets. Additional interim relief is justified and necessary to prevent significant damage to PFSE. Without additional interim relief, the 12 March 2025 interim relief order would be ineffective in substance, because (i) defendants II and III would still be able to cause damage to PFSE and (ii) the court-appointed alternate members of the administrative board would not be able to ensure the protection of PFSE's rights. It becomes impossible to satisfy PFSE's claim against Burfa Media OÜ because the assets of Burfa Media OÜ will also be confiscated as part of the confiscation proceedings in the USA (see Annex 1 Preliminary Confiscation Order, p. 4, item 1 (lines 7-9) item m. (lines 10-12); p. 8 item bb. lines 7-13). Damages amounting to tens of millions of euros to PFSE can be avoided by expanding the powers of the alternate members of the board.

10. Clause 3 of subsection 1 of § 378 of the Code of Civil Procedure provides that a measure of interim relief is restraining the defendant from performing certain transactions or certain operations. When requesting the implementation of a remedy, the prohibited transactions and operations must be precisely described in the application for interim relief. A court order prohibiting the defendant from engaging in certain transactions or operations must also clearly and precisely define the transactions and operations in question. The remedy provided for in clause 3 of subsection 1 of § 378 of the Code of Civil Procedure can, among other things, be applied for the preliminary regulation of a legal relationship pursuant to subsection 2 of § 377 of the Code of Civil Procedure. By means of an injunction, it is possible to prevent defendants II and III from engaging in activities that harm the plaintiff's rights during the legal proceedings.

11. Pursuant to clause 10 of subsection 1 of § 378 of the Code of Civil Procedure, a measure of interim relief is also any other measure that the court considers necessary. Accordingly, the list of measures of interim relief listed in § 378 of the Code of Civil Procedure is not exhaustive. The Supreme Court has confirmed that when regulating a disputed legal relationship pursuant to subsection 2 of § 377 of the Code of Civil Procedure, the court has extensive discretion and therefore, at the request of the plaintiff, the court may decide to provide for interim relief with measures other than those listed in § 378. The plaintiff requests by way of interim relief to extend the powers of the temporary members of PFSE's administrative board with limited powers until the entry into force of the judicial decision in civil matter No. 2-25-3440 so that, in addition to the powers specified in Tartu District Court's interim relief order of 12 March 2025, the temporary members have the authority to collect claims arising from loan agreements against Burfa Media OÜ, to perform the necessary actions and to submit documents (including the filing of a bankruptcy warning and a bankruptcy petition).

4

12. The requested measures of interim relief do not burden the defendants more than is necessary to protect the plaintiff's legitimate interests. There are also no possible remedies that would be less burdensome for defendants II and III. The plaintiff has convincingly substantiated and proven that prohibiting defendants II and III from performing the acts specified in clause 18 of this application and extending the powers of the temporary members of the administrative board to file a claim against Burfa Media OÜ allows for the prevention of irreversible damage to PFSE. Furthermore, the measures sought in this application for interim relief will ensure compliance with the interim relief order of 12 March 2025, insofar as prohibiting defendants II and III from performing the acts specified in the resolution of this application ensures that the temporary members of the administrative board can successfully file a claim for the return of PFSE's assets in the United States.

13. Considering the content of the court settlements and the obligations of defendants II and III set out therein, it is obvious that defendants II and III have an obligation to oppose any measure of interim relief sought by the plaintiff. It is also plausible that defendants II and III have an obligation to inform the United States of all circumstances that may threaten confiscation and also to disclose the contents of the application for interim relief. Although defendants II and III have not yet taken any action that would make it impossible for PFSE to bring an innocent owner claim, the substance of the relief sought by the plaintiff would provide grounds for such action in an expedited manner.

14. Considering the deadline for filing an innocent owner claim set by the confiscation order (20 April 2025), it is necessary to resolve the application for interim relief without hearing the defendants as soon as possible in order to protect the plaintiff's legitimate interests. Only in this way will the achievement of the objective of the measures determined by the interim relief order of 12 March 2025 be ensured, i.e. granting the temporary members of the administrative board the authority to file a claim in the United States for the return of the seized assets of PFSE and to perform the necessary actions for this purpose. Hearing defendants II and III before deciding on the application for interim relief jeopardises the achievement of the aforementioned objective. Immediate intervention is essential to achieve the objective of interim relief.

15. Also, the purpose of interim relief would be jeopardised by the hearing of defendants II and III in connection with the expansion of the powers of the temporary members of the administrative board to submit claims against Burfa Media OÜ and perform related actions. As can be seen from the confiscation order, the assets of Burfa Media OÜ are also subject to confiscation. If they are confiscated, it becomes impossible to satisfy the claim of PFSE. Hearing defendants II and III would most likely render the requested relief ineffective, as defendants II and III are obliged to notify the DoJ of this application for interim relief, as a result of which the seizure of Burfa Media OÜ's assets may be carried out immediately.

**REASONING OF THE COURT**

16. The court finds that the application for additional interim relief must be <u>granted in part</u>.

17. Upon granting interim relief, the court must verify whether the application for interim relief meets the requirements set out in subsection 1 of § 381 of the Code of Civil Procedure (including presence of the circumstances specified in § 377 of the Code of Civil Procedure), whether the statement of claim meets the requirements set out in clauses 1-3 of subsection 1 of § 363 of the Code of Civil Procedure, whether the claim is admissible (in particular, subsection 1 of § 371, subsection 1 of § 423, § 428 of the Code of Civil Procedure), legally prospective (subsection 2 of § 371, subsection 2 of § 423 of the Code of Civil Procedure), and whether the circumstances underlying the claim and its securing are justified (§ 235 and subsection 2 of § 381 of the Code of Civil Procedure) (see Civil Chamber of the Supreme Court order No. 3-2-1-83-16, clauses 13–18). The plaintiff's claim is legally without prospects if, if the facts presented in the claim were proven, the claim could not be satisfied on any substantive legal basis (Civil Chamber of the Supreme Court order No. 3-2-1-193-13, clause 12). The court is still of the opinion that the action filed may be legally prospective for the purposes of the aforementioned norms.

18. § 377 (2) of the Code of Civil Procedure provides that in order to secure an action the object of which is not a monetary claim against the defendant, the court may provisionally regulate a disputed legal relationship and, above all, the manner of use of a thing, if this is necessary for the prevention of significant damage or arbitrary action or for another reason. This may be done regardless of whether there is reason to believe that failure to secure the action may render enforcement of the court judgment difficult or impossible.

19. In the initial interim relief order of 12 March 2025 the court has also explained that according to subsection 4 of § 378 of the Code of Civil Procedure, a measure of interim relief must be selected such that the measure would burden the defendant only insofar as this can be considered reasonable in view of the legitimate interests of the claimant and of the circumstances. The Supreme Court has stated that the court has extensive discretion in regulating the disputed legal relationship pursuant to subsection 2 of § 377 of the Code of Civil Procedure (Civil Chamber of the Supreme Court order No. 3-2-1-51-10, clause 11). For interim relief in a case that does not have a financial claim against the defendant, the court may, at the request of the plaintiff, provisionally regulate the disputed legal relationship. The purpose of interim relief of such a case (preliminary regulation of the disputed legal relationship) is primarily the prevention of significant harm or arbitrary action (subsection 2 of § 377 of the Code of Civil Procedure) in order to ensure legal peace during the proceedings. The court has principally agreed with the plaintiff that Polybius Foundation SE's actions in the possible recovery of its assets and the prevention of confiscation are currently essentially paralysed and, presumably, the company is unable to make decisions or take actions that would allow it to take the necessary steps to protect Polybius Foundation SE's assets in the context of the criminal proceedings taking place in the United States under time-critical circumstances. In order to contest the confiscation of assets, the company's management body will probably need to take the necessary steps in the near future, and the plaintiffs have convincingly justified, by referring to the conflict of interest between defendant I and defendants II and III, why additional judicial measures are necessary in order to unhinderedly file a claim in the interests of defendant I in the confiscation proceedings.

20. There are currently 5 members on PFSE's administrative board, including three temporary members appointed by the court and the current members, defendant II and defendant III. The court points out that according to article 50(1) of *Council Regulation (EC) No 2157/2001 of 8 October 2001 on the Statute for a European company (SE)* (hereinafter: *Regulation*), unless otherwise provided by this Regulation or the statutes, the internal rules relating to quorums and decision-taking in SE organs shall be as follows:(a)quorum: at least half of the members must be present or represented;(b)decision-taking: a majority of the members present or represented. According to subsection 4 of § 24 of *Council Regulation (EC) No 2157/2001 of 8 October 2001 on the Statute for a European company (SE) Implementation Act* (hereinafter: SEPS), A member of the administrative board shall not participate in voting if approval of the conclusion of a transaction between a third person and the SE is being decided if *the interests of the member of the administrative board arising from such transaction are in conflict with the interests of the SE*. In turn, the court believes that a justified conclusion can be drawn from this that members of the administrative board should also be prohibited from representing the SE in such transactions or actions. Accordingly, the court finds that the application for interim relief is justified insofar as it requests that the court prohibit defendants II and III, within the framework of the preliminary regulation of the legal relationship, from giving consent on behalf of PFSE to the confiscation of PFSE assets for the benefit of the United States or from waiving PFSE's objections or claims in connection with said confiscation, prohibit defendants II and III from giving consent to the transfer of PFSE assets or otherwise participating in or facilitating transactions that serve the United States government's confiscation efforts with regard to PFSE, prohibit defendants II and III from obstructing the activities of the members of the administrative board appointed by the court order within the framework of said confiscation proceedings, for example, by restricting the access of alternate members of the administrative board to PFSE's assets or information, and prohibit defendants II and III from participating as members of the administrative board of PFSE in decision-making processes related to or arising from the criminal proceedings initiated against defendants II and III in the United States No. 2:22-CR-00185-RSL (United States v. Ivan Turõgin and Sergei Potapenko) and the court settlements entered into on behalf of PFSE within the framework thereof, in particular in matters where there is a conflict between the interests of defendants II and III and PFSE. In the aforementioned regard, the application for interim relief must be granted in the wording specified by the court.

21. However, the court finds that the request to grant temporary members of the administrative board the right to collect claims against Burfa Media OÜ (registry code: 12495372) on behalf of PFSE (including filing a bankruptcy notice and a bankruptcy petition and performing all other actions) as a preliminary regulation of the legal relationship is not convincingly substantiated. Based on the scant evidence presented to the court, it is not possible to determine with certainty the amount of PFSE's claim, the legal basis for the transfers, and the time when the entire claim became due. This is evident from A. Altementi's confirmations to Harju District Court on 05 March 2025 (digital file pages 421-422), *that the loans granted to Burfa Media OÜ in 2022 in the amount of 500 bitcoins are documented in the loan agreement dated 03 January 2022 (digital file pages 464-469, loan agreement PF-BM 01/22 of 03.01.2022 and its translation). Due to the*

detention of I. Turõgin and S. Potapenko in 2022, the loans remained partially undocumented, i.e., to the best of my knowledge, no written loan agreements have been concluded.

22. Otherwise, the court adheres to the reasoning expressed in the court orders resolving the application for interim relief made in the context of this civil matter, including repeatedly stating that the purpose of interim relief is to implement interim measures to ensure the execution of the court judgement or to prevent significant damage or arbitrariness, not to substantially transform the legal relationships of the parties before the final judicial decision.

(signed digitally)

Kadi Karting
judge

This document was translated into English from its original version in Estonian by Estonian-English-Estonian sworn translator Urmas Pail who acts as a sworn translator in the Republic of Estonia on the basis of professional certificate No. 90, issued on 24 January 2017.

Address: Kõivu tee 28, 12112 Tallinn, ESTONIA; Telephone: +372 510 0030; E-mail: urmas.pail@gmail.com.

This translation is registered in the book concerning the professional activities of the sworn translator under registration number 157 on 02 April 2025 in Tallinn.

This document consists of thirteen (13) sheets of paper bound by string and embossed seal.

The sworn translation only covers Estonian text in the document being translated.

